**CLEVELAND, C., C. & ST. L. RY. CO. et al. v. JACKSON.**

Circuit Court of Appeals, Sixth Circuit. November 17, 1927.

No. 4888.

1. Railroads ⊙⟶142—Interstate Commerce Commission, in hearing on application for consolidation, considers rights of minority stockholders (Interstate Commerce Act, § 5, par. 2, as amended by Transportation Act 1920, § 407 [49 USCA § 5]).

Under Interstate Commerce Act, § 5, par. 2, as amended by Transportation Act 1920, § 407 (49 USCA § 5 [Comp. St. § 8567]), which empowers the Interstate Commerce Commission to permit consolidation of railway properties through lease or purchase of stock, whenever it is of opinion that it is "in the public interest," and on such terms as are "just and reasonable in the premises," on the hearing of an application for such consolidation the Commission has power, and is required, to consider the rights of minority stockholders.

2. Commerce ⊙⟶89—Court should not interfere by injunction with proceedings before Interstate Commerce Commission for approval of lease (Interstate Commerce Act, § 5, par. 2, as amended by Transportation Act 1920, § 407 [49 USCA § 5]).

Pending application to the Interstate Commerce Commission for approval of a proposed lease of a railroad system by another, under Interstate Commerce Act, § 5, par. 2, as amended by Transportation Act 1920, § 407 (49 USCA § 5 [Comp. St. § 8567]), until which approval the lease cannot be effective, it is not the province of a court of equity to interfere by injunction, at suit of a minority stockholder, who has a remedy by review in the courts of the action of the Commission, and with the effect of rendering nugatory any favorable action of the Commission.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Suit in equity by John D. Jackson against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company and the New York Central Railroad Company. From an order granting a preliminary injunction, defendants appeal. Reversed.

The capital stock of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, known as the Big Four, consists of 470,287 shares of common stock of the par value of $100 each, and of 99,985 shares of preferred stock of like par value. In the consolidation of certain railroad companies into the New York Central Railroad Company, that company became the owner of 302,077 shares of this capital stock. In 1922 it obtained authority from the Interstate Commerce Commission, under paragraph 2 of section 5 of the Interstate Commerce Act, as amended by the Transportation Act, § 407 (49 USCA § 5 [U. S. Comp. St. § 8657]), to purchase other stock of the Big Four, thereafter acquired additional stock of that company, and when this suit was instituted owned 429,411 shares of the common stock, or more than 91 per cent. thereof, and 84,681 shares of the preferred stock, or more than 84 per cent. thereof. In June of 1926 the board of directors of the Big Four passed a resolution authorizing the lease of its properties to the New York Central, and called a meeting of the stockholders of the Big Four to be held September 27, 1926, for the purpose of authorizing and approving a proposed lease. On July 29, 1926, the New York Central filed with the Interstate Commerce Commission an application, under paragraph 2 of section 5 of the Interstate Commerce Act as amended, for an order of

the Commission authorizing and approving the lease. It filed with its application a copy of the lease approved by the resolution of its board of directors of June, 1926.

Jackson, a stockholder in the Big Four, for himself and as the authorized agent of others owning more than 15,000 shares of the capital stock of that company, brought this suit, September 7, 1926, against that company and the New York Central, in the District Court, to enjoin the latter company from voting the capital stock of the former company which it owned in favor of authorizing or approving the proposed lease, or in favor of authorizing or approving the lease as revised or modified; also to enjoin the Big Four, its officers and agents, from executing and delivering the lease as prepared, or any revised or modified form thereof, and to enjoin the New York Central from accepting the delivery of the lease, or any revised or modified form thereof. Upon his motion, upon the hearing of which proofs were submitted, an interlocutory decree was entered, enjoining the New York Central from voting any of the capital stock of the Big Four which it owned in favor of authorizing, approving, or consenting to the proposed lease, or in favor of authorizing, approving, or consenting to any revised or modified form thereof, except upon approval of the court, and further enjoining the Big Four from executing and delivering the proposed lease, or any revised or modified form thereof, and the New York Central from executing or accepting delivery of the lease, or any revised or modified form thereof.

Robert J. Cary, of Chicago, Ill., and Harry N. Quigley, of Cincinnati, Ohio (Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, on the brief), for appellants.

Robert A. Taft, of Cincinnati, Ohio (Root, Clark, Buckner, Howland & Ballantine, of New York City, and Taft, Stettinius & Hollister, of Cincinnati, Ohio, on the brief), for appellee.

Before DENISON and MOORMAN, Circuit Judges, and HICKS, District Judge.

MOORMAN, Circuit Judge (after stating the facts as above). The right of plaintiff to an injunction depends on what would be the effect of the threatened acts if permitted to be consummated. This is to be considered in the light of the Transportation Act of 1920, the main purpose of which was to permit the consolidation of railway properties in the United States into a limited number of systems in the interest of economi-

cal and efficient railway service. To that end Congress conferred upon the Interstate Commerce Commission enlarged powers, and imposed upon it the duty of evolving plans for, without giving it the right to compel, such consolidations. It also conferred upon the Commission the power to approve and authorize the acquisition by one carrier, either by lease or the purchase of stock, of another carrier, under such rules and regulations and for such consideration and on such terms and conditions as should be found by the Commission to be just and reasonable in the premises.[1] By a subsequent paragraph in the act the carrier seeking to acquire the control of another carrier, under a lease or by the purchase of stock, was relieved from the operation of the anti-trust laws and all other restraints or prohibitions by law, state or federal, in so far as might be necessary to enable such carrier "to do anything authorized or required by any order made under and pursuant" to the enlarged powers of the Commission. U. S. Comp. Stat. Anno. Supp. 1923, § 8567 (8) (49 USCA § 5).

[1] It is clear, we think, and, indeed it is not denied, that a lease like the one involved here, if approved by the stockholders of both companies and executed on behalf of those companies, could have no effect until the Commission found that the making of the lease would "be in the public interest," and until it approved, not only the terms and conditions of the lease, but the consideration therefor, finding that such terms, conditions and consideration were "just and reasonable in the premises." The plaintiff doubts that in determining the reasonableness of the terms the Commission has the right to consider the interest of minority stockholders, but admits that it "has assumed such jurisdiction, although never confirmed by any court decision." We think it is the duty of the Commission to protect both the public and private interests, and although it\finds

---

[1] "Whenever the Commission is of opinion, after hearing, upon application of any carrier or carriers engaged in the transportation of passengers or property subject to this act, that the acquisition, to the extent indicated by the Commission, by one of such carriers of the control of any other such carrier or carriers either under a lease or by the purchase of stock or in any other manner not involving the consolidation of such carriers into a single system for ownership and operation, will be in the public interest, the Commission shall have authority by order to approve and authorize such acquisition, under such rules and regulations and for such consideration and on such terms and conditions as shall be found by the Commission to be just and reasonable in the premises." 3 U. S. Comp. Stat. Anno. Supp. 1923, § 8567 (2).

that the acquisition will be in the public interest, it may not approve the lease unless it further finds that the consideration, terms and conditions thereof are just and reasonable—just to the lessor, the lessee, and necessarily to the stockholders of each. The ruling in the Nickel Plate Case, 105 Interst. Com. Com'n R. 425, evidences such an interpretation of its duties by the Commission.

While it is true, as plaintiff contends, that the law does not require that minority stockholders be made parties to a proceeding before the Commission seeking the approval of a lease, it is also true that the Commission has heard such stockholders when requested to do so, and that the statute itself, as we construe it, requires that the interest of the stockholders be considered and protected. Furthermore, the orders of the Commission authorizing a lease are subject to review on behalf of a stockholder in a court proceeding. Chicago Junction Case, 264 U. S. 258, 44 S. Ct. 317, 68 L. Ed. 667; 38 Statutes at Large, p. 220 (28 USCA § 47). It results, therefore, that before the lease can be made effective, an objecting stockholder has the right to present his case before two tribunals, both of which are charged with the duty of protecting his interest.

[2] In view of these rights of the plaintiff, we do not find it necessary to consider the claims of fraud or inadequacy of consideration, or to determine what effect, if any, the Transportation Act had upon the ordinary rules of law and equity or upon the laws of Ohio (sections 8809–8813, both inclusive, General Code of Ohio), prescribing the conditions upon which railways may be leased. It is enough, we think, to measure the exigencies of the case by the principles applicable to injunctional relief. The general rule on that subject is that the granting of an interlocutory injunction rests in the sound judicial discretion of the trial court, and unless the court has departed from the principles of equity established for its guidance, its order will not be reversed by the appellate court without clear proof of an abuse of discretion.[2] This court has held that such

an injunction should not issue unless a reasonably clear case of necessity and other irreparable injury is made out. L. & N. R. R. Co. v. Western Union Telegraph Co. (C. C. A.) 252 F. 29. Other courts have said that the question should be determined by balancing the injuries which would result from granting or refusing the injunction.[3]

In applying these rules we fail to find grounds for equitable intervention. If the threatened action is taken, no right which plaintiff has would be imperiled, and no irreparable injury could result. Before the lease could be made effective, it would still be necessary for the Commission to pass upon its terms as they affected the plaintiff, and if he should be dissatisfied with its order, the courts would be open to him. The inconvenience, if any, that he would be put to in presenting his case to the Commission before bringing it to court, and the force and effect of the Commission's findings of fact in a court proceeding to review its order, are not the character of injury, if they be injury at all, that warrants an injunction. On the other hand, defendants are prohibited by the order of injunction from approving or executing the lease. The effect of the order is to take away from them the power of asking the Commission in good faith to act upon their application, for so long as the order stands, neither this lease nor any modified form of it can be executed, although a revised form might be found by the Commission to be in the public interest and to be fair and just to all parties concerned. Besides, the Commission could not be expected to pass upon an application which neither party, as it stands, could carry out. In this respect the injunction nullifies the application that has been made. We think the injury resulting to defendants, by issuing the order, so far outweighs the inconvenience, if any, which plaintiff would have suffered by refusing it, that it should not have been issued.

The decree is accordingly reversed.

[2] American Grain Separator Co. v. Twin City Separator Co. (C. C. A.) 202 F. 202; Cruickshank v. Bidwell, 176 U. S. 73, 20 S. Ct. 280, 44 L. Ed. 377; Behre v. Insurance Co. (C. C. A.) 297 F. 986; Denver & R. G. R. Co. v. United States (C. C. A.) 124 F. 156; State of Ohio v. Cox (D. C.) 257 F. 334; Southern Pacific Co. v. Earl (C. C. A.) 82 F. 690.

[3] Allison v. Corson et al. (C. C. A.) 88 F. 581; Cohen v. Delavina (C. C.) 104 F. 946; Colorado Eastern R. Co. v. C., B. & Q. Ry. Co. (C. C. A.) 141 F. 898; Carpenter et al. v. Knollwood Cemetery et al. (C. C.) 188 F. 856; Wilmington City Ry. Co. et al. v. Taylor et al. (D. C.) 198 F. 159.