BRESWICK & CO. and Myron Neisloss, as stockholders of Alleghany Corporation and on behalf of themselves and all other stockholders similarly situated, Plaintiffs,

v.

O. Henry BRIGGS, Thomas J. Deegan, Jr., Walter W. Foskett, Henry J. Guild, Allan P. Kirby, Herman R. Neff, Andrew Van Pelt, Robert R. Young, Clint W. Murchison, Sid W. Richardson, John D. Murchison, Clint W. Murchison, Jr., Murchison Brothers and Alleghany Corporation, Defendants.

United States District Court.
S. D. New York.
April 6, 1955.

954

Rosston, Hort & Brussel, New York City (George Brussel, Jr., Eugene G. King, Joseph B. Hyman, New York City, of counsel), for plaintiffs.

Lord, Day & Lord, New York City (Thomas F. Daly, Saul L. Sherman, New York City, of counsel), for defendant Alleghany Corp.

WALSH, District Judge.

Upon the claim that Alleghany Corporation is an investment company subject to regulation by the Securities and Exchange Commission, rather than a carrier subject to regulation by the Interstate Commerce Commission, plaintiffs, minority stockholders of Alleghany, seek to enjoin it from conducting certain proceedings before the I.C.C. and to prevent the issue and exchange of certain securities for which S.E.C. approval would be required if this claim of the plaintiffs is

correct. Plaintiffs' application for a temporary injunction is denied, and they are left to the exhaustion of their administrative remedies before the I.C.C. and before the court having jurisdiction to review the determinations of that agency.

The management of Alleghany claims that that corporation controls the New York Central Railroad system and that consequently it is a carrier under the provisions of Section 5(3) of the Interstate Commerce Act, 49 U.S.C.A. § 5(3). All agree that if it is such a carrier it is exempt from regulation by the S.E.C., 15 U.S.C.A. §§ 77c, 80a–3(c) (9).

Plaintiffs claim that control of a single railroad system does not bring Alleghany within the Interstate Commerce Act; and that even if the New York Central system be considered a combination of two or more carriers (which would clearly constitute the corporation controlling it an undisputed carrier), Alleghany does not in fact control it.

The question should first be determined by the I.C.C. and the courts reviewing its proceedings. Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Macauley v. Waterman S.S. Corp., 1946, 327 U.S. 540, 66 S. Ct. 712, 90 L.Ed. 839. Determination of what constitutes control of a carrier has implications to both the I.C.C. and the S.E.C. broader than this individual case. It is a matter within their particular expertness and a matter in which the I.C.C. should be given an opportunity to harmonize its prior administrative decisions.

The I.C.C. has pending before it two proceedings in which the very question is presented. In one, Finance Docket 18656, its Division Four, subject to review by the full Commission, has held that Alleghany is a carrier subject to its jurisdiction rather than that of the S.E.C.[1] This proceeding concerned a

1. Comment on the sufficiency of Division Four's findings would not be proper. Its determination is still subject to the review of the full Commission and by the courts. State of Florida v. United States, 1931, 282 U.S. 194, 51 S.Ct. 119,

75 L.Ed. 291; City of Yonkers v. United States, 1944, 320 U.S. 685, 64 S.Ct. 327, 88 L.Ed. 400. The question of control apparently turns on the fact that Alleghany's beneficial holdings of the Central stock are less than the combined in-

merger of two components of the New York Central system. Plaintiffs sought to intervene but their application was denied. The S.E.C. was permitted to intervene for the limited purpose of submitting a memorandum "suggesting" that the I.C.C., in its discretion, defer to the S.E.C. because Alleghany operated preponderantly as an investment company. The Division concluded that it could not concur in this "suggestion" because the statute did not allow it such discretion.

█ In the second proceeding pending before the I.C.C., Finance Docket 18866, Alleghany seeks approval of the very stock issue this court is asked to enjoin. Plaintiffs have not sought to intervene in this proceeding. Denial of intervention in Docket 18656, where plaintiffs claimed no special interest in the merits but desired only to raise the issue of jurisdiction, does not necessarily fore-close intervention where this interest is obviously substantial. The interests of minority stockholders in proceedings under § 5 and § 20a of the Interstate Commerce Act must be considered and protected by the Commission. Cleveland, C. C. & St. L. R. Co. v. Jackson, 6 Cir., 1927, 22 F.2d 509, 511; Schwabacher v. United States, 1948, 334 U.S. 182, 201, 68 S.Ct. 958, 92 L.Ed. 1305.

█ Finally, an adequate legal remedy is available to plaintiffs in the form of judicial review when the I.C.C. proceedings are finally terminated. When interests of minority stockholders as distinguished from those of the corporation are affected by orders of the I.C.C., those stockholders have standing to review the order. New York Central Securities Corp. v. United States, D.C.S.D.N.Y 1931, 54 F.2d 122, affirmed, 1932, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138; Sakis v. United States, D.C.D.C.1952, 103 F.

---

dividual holdings of Kirby, Young, Richardson and the Murchison group. Alleghany's voting power, however, is increased by a joint venture agreement which gives it the power, at least at present, to vote 300,000 shares of the Murchison stock. The details of this joint venture agreement, as to terminability and other matters, do not appear from the report of Division Four or from the papers before me.

Division Four gave no consideration to plaintiffs' contention that Alleghany has no control of the individual members of the board of Central; that rather, these individuals control Alleghany and Alleghany's voting rights in the Central are merely an instrument of control exercised by the Central's own directors and officers.

Sifted from the long opinion of Division Four, the following language constitutes its only discussion as to control:

"The capital stock of Central is widely held by the public, but control of its functions reposes in Alleghany and its officers as a result of a proxy contest preceding a stockholders' meeting of May 26, 1954, at which the nominees chosen by Alleghany were elected as Central's board of directors. Alleghany has an undivided half interest in 600,000 shares of Central stock with voting rights to the 600,000 shares under joint venture agreements, and in addition, owns 15,500 shares. The voting rights of Alleghany represent almost 10 percent of the total shares of Central stock outstanding. The chairman of the board of directors of Alleghany, who holds the same position with Central, beneficially owns 100,200 shares of the latter's stock. The president of Alleghany is a director of Central, and beneficially owns 300,100 shares of the latter's stock. A vice-president of Alleghany holds a similar position with Central." (Sheet 3.)

"We recognize that the present control of the Central system has passed to Alleghany by regular corporate procedures even though our approval in the premises has not been sought. * * * The important thing is that Alleghany does control one of our largest railroad systems and the regulation thereof in the public interest is our responsibility. * * *" (Sheet 16.)

"For the reasons stated we think that we are warranted in continuing Alleghany in its present status. Accordingly, we will, pursuant to section 5(3), subject Alleghany to the provisions of section 20(1) to (10), inclusive, and section 20a (2) to (11), inclusive of the Interstate Commerce Act [49 U.S.C.A. §§ 20(1–10), 20a (2–11)]. In the event that future circumstances warrant any change or modification of this finding, we retain jurisdiction to enter any order we deem necessary to protect the public interest." (Sheet 17.)

Supp. 292, appeal dismissed, 1952, 344 U.S. 801, 73 S.Ct. 4, 97 L.Ed. 625; cf. Benton v. United States, D.C.N.D.Ga. 1953, 114 F.Supp. 37; Pittsburgh & W. V. R. Co. v. United States, 1929, 281 U.S. 479, 487, 50 S.Ct. 378, 74 L.Ed. 980. This remedy is available even though plaintiffs failed to intervene or are denied intervention in both I.C.C. proceedings, for lack of status as intervenors does not preclude standing to review where the court is satisfied that the parties have a protectible legal interest. Skinner & Eddy Corp. v. United States, 1919, 249 U.S. 557, 562, 39 S.Ct. 375, 63 L.Ed. 772; Interstate Commerce Commission v. Diffenbaugh, 1911, 222 U.S. 42, 49, 32 S.Ct. 22, 56 L.Ed. 83; see Alton R. Co. v. United States, 1942, 315 U.S. 15, 19, 62 S.Ct. 432, 86 L.Ed. 586.

██ Plaintiffs have a right to challenge the jurisdiction of the I.C.C. They cannot be estopped by management's acquiescence to unauthorized regulation. Cf. Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; Carter v. Carter Coal Co., 1936, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. They must, however, exhaust administrative remedies, including their review in appropriate court proceedings. Their application now is premature. Myers v. Bethlehem Shipbuilding Corp., supra, 1938, 303 U.S. 41, 58 S.Ct. 459; Cleveland, C. C. & St. L. R. Co. v. Jackson, 6 Cir., 1927, 22 F.2d 509; Berg v. Cincinnati, Newport & Covington R. Co., D.C.Ky.1944, 56 F.Supp. 842.

The I.C.C. and the court reviewing its determination should control all incidents of the litigation. Alleghany cannot proceed with the stock issue under attack prior to authorization of the I.C.C., if it should conclude it has jurisdiction. The court having jurisdiction of the question on review will have power to stay action pending its determination if it concludes such action is necessary.

The one act sought to be enjoined which is not directly subject to control by the I.C.C. and the court reviewing its determination, is the proposed exchange of voting stock held by Alleghany in Investors Diversified Services, Inc., for non-voting stock of the same corporation held by the defendant Murchison. No danger of irreparable damage pending administrative determination of the major jurisdictional question above discussed has been shown. The basis alleged in the complaint (possible loss of service contracts by I.D.S.) is concededly erroneous. The individual defendants are apparently capable of responding in damages if the transaction should be held illegal for failure to comply with the Investment Company Act or for any other reason.

Motion denied. Settle order on notice.