Vincent A. Lupiano, J.
This is a motion pursuant to rules 106, 107 and 212 of the Rules of Civil Practice which seeks to dismiss the complaint for lack of jurisdiction of the subject matter or for insufficiency in an action for a declaratory judgment.
The facts are that the plaintiffs are minority stockholders and bondholders in the defendant Peoria and Eastern Railway *287 Company, an Illinois corporation. It appears that in the year 1890 the Peoria, then in financial difficulty, entered into an operating agreement with the defendant Cleveland, Cincinnati, Chicago & St. Louis Railway Company, commonly known as the “ Big Four”. This agreement was part of a corporate reorganization plan whereby the Big Four undertook to operate the Peoria for 50 years and for “ such further time thereafter as it [the Big Four] may elect.” In 1930, with the approval of the Interstate Commerce Commission, operation of the Big Four was assumed by the defendant NeAV York Central Railroad Co.
In 1940 the operation agreement between the Peoria and the Big Four was extended for 20 years with the approval of the Interstate Commerce Commission. In January of this year the Big Four, at New York Central’s request, again notified Peoria that it wished to extend again the operation agreement for an additional term of 10 years, and on February 18, 1960 the agreement was extended by the defendant corporations subject to the approval of the Interstate Commerce Commission. Since subdivision (2) of section 5 of the Interstate Commerce Act (IT. S. Code, tit. 49, § 5, subd. [2]) expressly provides that such operation agreements must be authorized and approved by the commission, application was made for approval and the administrative proceeding is now pending.
The complaint on behalf of the minority stockholders against the three aforesaid defendant railroads and directors of the defendant Peoria alleges in substance that the Peoria is dominated and controlled by the New York Central and Big Four by means of interlocking directorates and stock ownership. It is further alleged that the defendants have a fiduciary obligation to the minority stockholders of the Peoria which has been breached by entering into transactions detrimental to Peoria and beneficial to the Big Four and New York Central. Specifically, it is stated that the extension agreement of February 18, 1960 will seriously and irreparably damage Peoria and its minority stockholders and bondholders. Therefore, it is requested that this court determine whether the Big Four and the Central have the right to extend the operating agreement for another term of 10 years. If there is no such right it is requested that an injunction issue to restrain the parties from entering the agreement. And finally, it is requested that if the court finds that there is no such right, but such an agreement would be beneficial to the Peoria, that an agreement be made under the direct supervision of this court.
Before determining the sufficiency of the complaint, the first question to be resolved is whether this court has jurisdiction *288 of the subject matter of the action or in its discretion should •accept or decline jurisdiction, for rule 212 of the Rules of Civil Practice provides: “ If, in the opinion of the court, the parties should be left to relief by existing form of actions, or for other reasons, it may decline to pronounce a declaratory judgment, stating the grounds on which its discretion is so exercised.” The purpose of the rule is to carry out the fundamental principle of section 473 of the Civil Practice Act, which provides that only such relief be granted in an action for a declaratory judgment as the court in the proper exercise of discretion thinks should be granted (Rubinstein v. Jamaica Nat. Bank of N. Y., 40 N. Y. S. 2d 23, aifd. 266 App. Div. 977). And the court may refuse to exercise jurisdiction upon a motion to dismiss (Goodman & Co. v. New York Tel. Co., 309 N. Y. 258; New York Post Corp. v. Kelley, 296 N. Y. 178,189).
It appears that other groups of minority stockholders of Peoria have sought and been granted the right to intervene before the Interstate Commerce Commission in the proceeding pending before it for the approval of the extension agreement. The petitions for intervention by the other stockholders state more particularly than do the allegations in the complaint the particular grievances of the said minority stockholders. Thus they claim in essence that the operation agreement has resulted in producing greater profits to the New York Central at the expense of Peoria. It is also claimed that the ratification of the extension agreement was not obtained from the required number of directors of Peoria and is thus in violation of Illinois law.
The Interstate Commerce Act regulates the operations of railroads engaged in interstate commerce. Thus not only must railroads apply for authorization before they may merge, acquire control or operate a railroad line (U. S. Code, tit. 49, § 5, subd. [2]), but they , may not abandon a line without first obtaining approval from the Interstate Commerce Commission (U. S. Code, tit.. 49, § 1, subd. [18]). This is so even if the ' operating railroad no longer has any contractual right in the line being operated (Thompson v. Texas Mexican Ry. Co., 328 U. S. 134). Moreover, the act itself provides that in a proceed- ■ ing of this nature minority stockholders have a right to be heard (U. S. Code, tit. 49, § 5, subd. [2], par. [b]) so that their interests may be considered and protected (Cleveland, C. C. & St. L. Ry. Co. v. Jackson, 22 F. 2d 509 [6th Circ. 1927]). Nor may the commission delegate this power to other tribunals but must pass on and approve of all capital liabilities of the railroad companies. Apart from meeting the test of public *289 interest, the plan of operation, as to stockholders, must be found to be just and reasonable (Schwabacher v. United States, 334 U. S. 182). The commission has broad powers to approve an operations agreement ‘ ‘ upon the terms and conditions, and with the modifications, so found to be just and reasonable ’ ’ (U. S. Code, tit. 49, § 5, subd. [2], par. [b]). And in this field the jurisdiction of the Interstate Commerce Commission is plenary and exclusive and independent of all other State or Federal authority (Schwabacher v. United States, supra; U. S. Code, tit. 49, § 5, subd. [11]).
From this it can be observed that Congress, in the field of consolidation, merger or operations of railroads, has granted the Interstate Commerce Commission broad and exclusive administrative powers. This is in keeping with the general policy of an integrated national transportation system (County of Marin v. United States, 356 U. S. 412).
Because of the broad administrative power vested in the Interstate Commerce Commission, any of the relief sought and granted in this action for a declaratory judgment by the courts of this State would have little if any effect in remedying the alleged grievances of the plaintiff minority stockholders. First, even assuming that this court had the power to enjoin the execution of the extension agreement, the result would be of slight significance since the Big Four and the New York Central cannot abandon its operation of the Peoria Bailway without the approval of the Interstate Commerce Commission. And the commission might well determine the terms and conditions upon which the operation should be continued (Thompson v. Texas Mexican Ry. Co., supra). Second, at this stage of the proceedings any finding by the court as to the extension agreement would be premature, for it was executed subject to the approval or modification by the Interstate Commerce Commission which is still pending. Third, even assuming that the extension of the operations agreement by less than the required number of directors of Peoria is in violation of Illinois law, little could be gained by enjoining the execution of the contract because the Interstate Commerce Commission has the power in certain instances to issue orders in contravention of State laws .(Kansas City So. Ry. Co. v. Daniel, 180 F. 2d 910; People v. Illinois Cent. R. R. Co., 324 111. 591, cert, denied 275 U. S. 541). From this it can be observed that any declaration of rights by this court of minority stockholders of Peoria would be of small .consequence. And in the area of declaratory judgment the courts of this State have always refused to decide abstract questions of law where they are unable to implement their *290 determination (Red Robin Stores v. Rose, 274 App. Div. 462; James v. Alderton Dock Yards, 256 N. Y. 298). Moreover, it appears that the extension agreement was executed in February of this year subject only to the approval of the Interstate Commerce Commission. An injunction restraining the commission of acts already committed would be futile (Cuppy v. Ward, 187 App. Div. 625, affd. 227 N. Y. 603; Sivakoff v. Sivakoff, 280 App. Div. 106). This is especially true where, as here, the alleged lack of authority of the hoard of directors of the defendant companies to enter into the extension of the operations agreement is voidable rather than void (Ewen v. Peoria & E. Ry. Co., 78 F. Supp. 312). Also, the courts of New York have always been reluctant to interfere in the internal affairs of foreign corporations (22 Carmody-Wait, New York Practice, p. 735).
Finally, there is the problem of supervising the terms and conditions of any subsequent extended operations agreement of the defendant. Such relief can more readily be obtained in an administrative hearing. Congress has provided the necessary machinery for the minority stockholders to intervene. By their expertness and experience in the field, the Interstate Commerce Commission can best determine the issues involved.
The court is not unmindful of the line of cases following Rockland Light & Power Co. v. City of New York (289 N. Y. 45, 51), which hold that a “complaint praying for judgment declaring the 1 rights and legal relations ’ of the parties should not be dismissed as insufficient merely because the facts alleged in the complaint show that the plaintiff is not entitled to a declaration of rights as the plaintiff claims them to be” (Sylvander v. Taber, 6 A D 2d 987). However, in view of the fact that the plaintiffs have an opportunity to intervene in the administrative proceedings, and the fact that the commission has the power to grant the requisite relief or remedy, the Interstate Commerce Commission is the better and proper forum for the determination of the issues raised herein. Accordingly, in the exercise of discretion the motion to dismiss is granted.