## PITTSBURGH & WEST VIRGINIA RAILWAY COMPANY *v.* UNITED STATES ET AL.

No. 680. Argued April 15, 1930.—Decided May 19, 1930.

*Mr. H. H. Hoppe,* with whom *Mr. C. F. Taplin* was on the brief, for appellant.

*Attorney General Mitchell, Assistant to the Attorney General O'Brian, Messrs. Elmer B. Collins,* Special Assistant to the Attorney General, *Daniel W. Knowlton,* Chief Counsel, Interstate Commerce Commission, and *Nelson Thomas* were on the brief for the United States and Interstate Commerce Commission.

*Messrs. W. C. Boyle, Clan Crawford, Charles F. Close,* and *Andrew P. Martin* were on the brief for the Wheeling & Lake Erie Railway Company.

*Messrs. W. H. Boyd, H. H. McKeehan, L. C. Wykoff, Charles W. Stage,* and *George William Cottrell* were on the brief for the Cleveland Union Terminals Company and the Cleveland Terminals Building Company.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

In 1921, the Interstate Commerce Commission authorized the New York Central Railroad and other rail car-

riers to join in establishing a union passenger station at Cleveland, through a subsidiary, the Cleveland Union Terminals Company.[1] *The Cleveland Passenger Terminal Case*, 70 I. C. C. 659. The Wheeling & Lake Erie Railway Company had for some years owned and maintained an independent passenger station at Ontario Street in Cleveland in the line of the easterly approach to the proposed union terminal. It was apparent from the outset that either ownership of or an easement in the Wheeling's site would be indispensable in order to provide the necessary easterly approach to the terminal.[2] Long negotiations culminated in a plan whereby the Wheeling consented to sell its site and become a tenant in the new terminal at an annual rental of $20,000. Contracts were made embodying this plan, subject to approval of the Interstate Commerce Commission.[3]

---

[1] Application for this authority had previously been dismissed. 70 I. C. C. 342. The Union Terminals Company is owned entirely by the New York Central, the New York, Chicago & St. Louis Railroad Co. (Nickel Plate), and the Cleveland, Cincinnati, Chicago & St. Louis Railway Co. (Big Four).

[2] The land upon which the station was to be constructed was owned by the Cleveland Terminals Building Company. It conveyed the ground to the Terminals Company, reserving the air rights to itself. And it undertook to procure for Terminals an easement in Wheeling's site.

[3] Five contracts were executed by the Wheeling: (a) A contract with the Building Company containing an option to sell the Ontario Street site for $1,600,000; (b) a contract with the Terminals for the use of the union depot; (the provisions of this contract are set out in detail in the report of the Commission); (c) a contract with the Erie Railroad for the temporary use of its Superior Avenue station pending completion of the union terminal; (d) a contract with the Big Four for the temporary use of its tracks in order to reach the Erie's station; (e) a contract with the Terminals for reimbursement by it of the amounts which the Wheeling would have to pay under its contracts with the Erie and the Big Four.

Thereupon, the Wheeling filed before the Commission two applications for certificates of public convenience and necessity, one permitting it to abandon its Ontario Street station,[4] the other authorizing it to use the facilities of the union terminal and, pending its completion, to use the facilities of the station of the Erie Railroad and the tracks of the Big Four. These applications were heard together as one case. The Pittsburgh & West Virginia Railway, a minority stockholder and connecting carrier of the Wheeling, was permitted to intervene and was heard in opposition to the applications. It opposed them on the grounds that the Ontario Street station was ample for both the present and future needs of the Wheeling; that the Wheeling's applications were authorized by directors elected by the votes of stock owned in violation of the Clayton Act by the Baltimore & Ohio Railroad, the New York Central and the Nickel Plate (*Interstate Commerce Commission* v. *Baltimore & Ohio R. R. Co.*, 152 I. C. C. 721); that the contracts executed by the Wheeling were made without first securing the consent of its stockholders, as required by the laws of Ohio; that the Wheeling's directors were interested in the union terminal project and did not give the Wheeling the benefit of their unbiased judgment; that the price to be paid the Wheeling for its site was inadequate and not the best price obtainable; that the Terminals Company is a common carrier whose rates are subject to regulation; that the yearly rental to be paid by the Wheeling is unduly low and unreasonably preferential of the Wheeling; that it is

---

[4] This authority was also sought from the Public Utilities Commission of Ohio, but the application was dismissed for want of jurisdiction and the order of dismissal was affirmed by the Supreme Court of Ohio. *Pittsburgh & West Virginia Ry. Co.* v. *Pub. Util. Comm.*, 120 O. S. 434. See also *Wheeling & Lake Erie Ry. Co.* v. *Pittsburgh & West Virginia Ry. Co.*, 33 F. (2d) 390.

therefore subject to be increased by the Interstate Commerce Commission; and that, if increased so as to eliminate the preference, it would confessedly be much more than the Wheeling could afford to pay and would imperil its financial condition.

The Commission held that the violation of the Clayton Act was immaterial since the election of the directors occurred prior to the Commission's finding of violation and the finding was not made retroactive; that it lacked jurisdiction to pass upon the alleged violations of Ohio law or upon the adequacy of the price agreed to be paid. for the Wheeling's site; that under paragraph (4) of § 3 of the Interstate Commerce Act, the agreed rental for the Wheeling's use of the union station was not subject to be increased by it; and that in view of all the circumstances, the rental was not unduly preferential of the Wheeling. It found that public convenience and necessity would be served by the granting of both applications; and accordingly issued its certificate as prayed for. *Operation of Passenger Terminal Facilities at Cleveland, Ohio, by Wheeling & Lake Erie Ry. Co.*, 154 I. C. C. 516.

The Pittsburgh & West Virginia then brought this suit in the District court for northern Ohio, eastern division. It joined as defendants the Wheeling, the Erie, the Big Four, the Terminals Company, the Building Company, the Interstate Commerce Commission and the United States. The purpose of the suit, as stated in the complaint, was two fold: first, to enjoin the Wheeling from abandoning its Ontario Street station and from performing its contracts with the other defendants; secondly, to set aside and annul the order of the Interstate Commerce Commission granting the certificate of public convenience and necessity. Separate relief was prayed for accordingly. As against the Wheeling, the prayer was founded on the several grounds advanced before the Commission. As against the United States and the Commission, on the

additional ground that the order was based on erroneous conclusions of law; to wit, that the Commission had no jurisdiction to pass on the adequacy of the price to be paid for the land and on the alleged violations of the laws of Ohio; that the Wheeling's directors were competent to act for it in this matter; and that the rental agreed to be paid by the Wheeling for the use of the union terminal facilities was not subject to be increased by the Commission.

The Pittsburgh moved for an interlocutory injunction. As the bill sought to suspend and set aside an order of the Interstate Commerce Commission, the District Judge called to his assistance two additional judges pursuant to the Urgent Deficiencies Act, October 22, 1913, c. 32, 38 Stat. 208, 219-20. By consent of the parties, the case was then heard, as upon final hearing; [5] and the court

---

[5] When the motion for a preliminary injunction was reached for hearing, the court formally " announced that the hearing, either temporary or as final, would be considered as involving two classes of questions: First, those involving the validity of the order of Interstate Commerce Commission as  dependent upon the record before it and thus involving questions of public interest in which the United States and Interstate Commerce Commission are interested; and second, those involving all  other grounds of attack upon the proposed action of the defendant [the Wheeling] and in which neither the United States nor the Interstate Commerce Commission was interested; and that the  hearing would proceed upon the first class of questions involved; that the court would then decide whether to dispose of the matter upon those questions or to continue the hearing upon the other questions. . . . Thereupon . . . the record of the proceedings and testimony before the Interstate Commerce Commission . . . was  received . . . upon the first class of questions, and the extent of its admissibility on the second class . . . reserved until the hearing of that branch of the case." But no further hearings were held.  Appellant claimed the right to introduce additional evidence and excepted to the above ruling of the court.  Compare *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 442.  Appellant's consent to final submission was subject to the above claims.

entered a final decree dismissing the bill on the merits as to both classes of relief prayed for. It declared, however, that the questions concerning the alleged violation of Ohio law, the competency of the Wheeling's directors and the other grounds of attack on the Wheeling's action were not properly before it as a three judge court. But, since diversity of citizenship existed and the district judge concurred in the judgment, the court passed on them and reserved to appellant the right to sever these issues for purposes of appeal and treat its decision on them as the decision of a single judge. *Pittsburgh & West Virginia Ry. Co.* v. *United States,* 41 F. (2d) 806. Appellant did not avail itself of this privilege but prosecuted a direct appeal to this Court from the whole decree. It repeats here the several grounds of attack urged before the district court. We have no occasion to consider the merits of the controversy. For, we are of opinion that appellant had no standing to bring this suit as one to set aside an order of the Commission; and that, insofar as the suit may be treated as one within the general equity jurisdiction of the District Court, we have no jurisdiction on a direct appeal to review its decision.

*First.* The District Court held that the appellant was entitled to bring this suit under the Urgent Deficiencies Act to set aside the order, because it had intervened in the proceedings before the Commission, and because it is a connecting carrier and a minority stockholder of the Wheeling. The court erred in so holding. The mere fact that appellant was permitted to intervene before the Commission does not entitle it to institute an independent suit to set aside the Commission's order in the absence of resulting actual or threatened legal injury to it, *Alexander Sprunt & Son* v. *United States, ante,* p. 249. Nor does the mere fact that its lines connect with those of the

Wheeling near the City of Pittsburgh, Pennsylvania,[6] entitle it to bring the suit. Its lines do not extend to Cleveland; and there is no suggestion that the order can affect it as carrier.[7] Finally, the claim that the order threatens the Wheeling's financial stability, and consequently appellant's financial interest as a minority stockholder is not sufficient to show a threat of the legal injury necessary to entitle it to bring a suit to set aside the order. This financial interest does not differ from that of every investor in Wheeling securities or from an investor's interest in any business transaction or lawsuit of his corporation. Unlike orders entered in cases of reorganization, and in some cases of acquisition of control of one carrier by another,[8] the order under attack does not deal with the interests of investors. The injury feared is the indirect harm which may result to every stockholder from harm to the corporation. Such stockholder's interest is clearly insufficient to give the Pittsburgh a standing independently to institute suit to annul

[6] The Pittsburgh's lines connect with those of the Wheeling at Mingo Junction and at Pittsburgh Junction, Ohio.

[7] The Pittsburgh contends also that it is seeking to acquire control of the Wheeling and that the Interstate Commerce Commission has allocated the Wheeling and the Pittsburgh to one system in its plan for the consolidation of the railroads. But these vague speculative interests are clearly insufficient to give the Pittsburgh an independent standing in this suit.

[8] See Control of Big Four by N. Y. Central, 72 I. C. C. 96; Nickel Plate Unification, 105 I. C. C. 425; Control of Cincinnati, Indianapolis & Western R. R., 124 I. C. C. 476; Unification of Southwestern Lines, 124 I. C. C. 401; N. Y. Central Unification, 150 I. C. C. 278; Lease of Louisville, Henderson & St. Louis Ry., 150 I. C. C. 741; Control Erie R. R. & Pere Marquette Ry., 150 I. C. C. 751; Denver & Rio Grande Western Reorganization, 90 I. C. C. 141. Compare Stock of Baltimore & Ohio R. R., 131 I. C. C. 27.

this order. The bill should have been dismissed without inquiry into the merits.

*Second.* The prayer that the contemplated action of the Wheeling should be enjoined because its directors hold office illegally, are faithless to their trust, are acting in violation of the rights of stockholders under the Ohio law, and, hence, that the Wheeling could not legally exercise the authority granted to it by the Commission, was not properly joined in this suit and is not subject to review in this Court on a direct appeal. An application for such relief may not be included in a bill under the Urgent Deficiencies Act to set aside an order of the Interstate Commerce Commission. Compare *Cleveland, C. C. & St. L. Ry. Co.* v. *United States,* 275 U. S. 404, 414; *Great Northern Ry. Co.* v. *United States,* 277 U. S. 172, 181. It is neither ancillary to nor dependent upon the judgment as to the order. Relief of that character may be had only in a suit invoking the plenary equity jurisdiction of the district court. Such a suit would be heard in ordinary course by a single judge; and it would be appealable only to the Circuit Court of Appeals. The case at bar is wholly unlike *The Chicago Junction Case,* 264 U. S. 258, 269, where a prayer to set aside the illegal purchase of stock and the lease already made was held proper as ancillary to setting aside the order of the Commission authorizing the same. There, the joinder was permitted in order to carry out the purpose of Congress to make the judicial review effective. Here, such joinder is unnecessary for that purpose. Moreover, grounds for general equitable relief, obviously, cannot give the Pittsburgh a standing in this Court on direct appeal under the Urgent Deficiencies Act, when it had no right to bring suit under that Act.

While there was no occasion for the district court to consider the merits, the bill was properly dismissed. The

decree is affirmed without prejudice to the right, if any, of the Pittsburgh to enjoin in a proper proceeding action by the Wheeling.

*Affirmed.*