**OSCAR GRUSS & SON, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**The NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY FIRST MORTGAGE 4% BONDHOLDERS COMMITTEE, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Nos. 66 Civ. 3413, 3425.

United States District Court
S. D. New York.

Nov. 28, 1966.

Myron S. Isaacs, New York City (Myron S. Isaacs and Paul M. Gartner, New York City, of counsel), for plaintiff Oscar Gruss & Son.

Migdal, Low, Tenney & Glass, New York City (Lester C. Migdal, Lawrence W. Pollack, and David Y. Handelman, New York City, of counsel), for plaintiff Bondholders Committee.

Robert W. Ginnane, Washington, D. C., for defendant Interstate Commerce Commission.

Sullivan & Worcester, Boston, Mass. (Joseph Auerbach, Arthur Blasberg, Jr., and Robert G. Bleakney, Jr., Boston, Mass., of counsel) Robert M. Peet, New York City, and James W. Moore and Robert W. Blanchette, New Haven, Conn., for intervening defendants Trustees of The New York, New Haven and Hartford Railroad Co.

Conboy, Hewitt, O'Brien & Boardman, New York City (Windsor F. Cousins, Philadelphia, Pa., and David J. Mountan, Jr., New York City, of counsel) for intervening defendant Pennsylvania Railroad Co.

Gerald E. Dwyer, New York City (James B. Gray and Jerome H. Shapiro, New York City, of counsel), for intervening defendant New York Central Railroad Co.

Before FRIENDLY, Circuit Judge, WEINFELD and LEVET, District Judges.

FRIENDLY, Circuit Judge:

In these actions against the United States and the Interstate Commerce Commission, Oscar Gruss & Son, which has acquired some $10,500,000 of the First and Refunding Mortgage 4% bonds of The New York, New Haven and Hartford Railroad Company (NH), and a bondholders' committee claiming to have authorizations from holders of some $20,000,000 of such bonds,[1] which has also intervened as plaintiff in Gruss' action, seek to enjoin consummation of the merger of the New York Central Railroad Company (NYC) with the Pennsylvania Railroad Company (PRR) [the proposed merged company being hereafter referred to as the Transportation Company], as authorized by the Commission in its report served April 27, 1966, 327 I.C.C. 475, and its report on reconsideration of September 16, 1966, 328 I.C.C. 304. A decision in which this court, by a divided vote, refused to enjoin consummation at the instance of competing railroads, Erie-Lackawanna

R. R. v. United States, 259 F.Supp. 964, is under appeal to the Supreme Court, with argument set for January 9, 1967 and the merger stayed until determination by the Court. NYC, PRR and the Trustees of NH have intervened as defendants and join the Interstate Commerce Commission in opposing the grant of a temporary injunction. The Commission has moved under Rule 12(b) to dismiss the complaints; NYC and PRR have moved for the same relief, also asking for summary judgment under Rule 56 on the basis of the record in the merger proceeding before the Commission and of the reorganization proceeding of NH under § 77 of the Bankruptcy Act in the District Court for Connecticut. Appended to the memorandum of the NH trustees is an affidavit of their counsel outlining the various steps taken by them with copies of relevant papers, which we may also consider on the motion for summary judgment.

The Commission's order approving the merger contained the following condition with respect to NH, 327 I.C.C. at 553:

"8. The Pennsylvania New York Central Transportation Company shall be required to include in the transaction all the New York, New Haven, and Hartford Railroad Company—the inclusion of passenger operations being subject to the findings and determinations of the Commission as set forth in Finance Docket No. 23831 issued simultaneously with this report—upon such fair and equitable terms as the parties may agree subject to the approval of the Bankruptcy Court and the Commission. Within 6 months after the date this report is served, the parties shall file with the Commission for its approval, a plan for such inclusion. In the event the parties are unable to reach an agreement (and subject to approval by the Bankruptcy Court) such inclusion shall be upon such fair and equitable terms

---

1. Since the bonds were not deposited there is no way of telling how many of these authorizations remain valid.

and conditions as the Commission may impose.

\* \* \* \* \* \*

"Jurisdiction is hereby reserved for such purposes. Consummation of the merger by applicants shall indicate their full and complete assent to these requirements."

Although the defendants and intervening defendants in the *Erie-Lackawanna* case, including the four states served by NH, argued to us that this condition was one of the strong public interest considerations favoring the merger and no one disagreed, Gruss and the Committee claim it is entirely inadequate. They point to a passage in the Commission's report, 327 I.C.C. at 522–27, where, after discussing the more limited recommendation of the hearing examiners on the subject of inclusion of NH, the Commission found "that this merger, without complete inclusion of NH, would not be consistent with the public interest, and, accordingly, we will require all the New Haven railroad"—passenger as well as freight service—"to be included in the applicants' transaction." 327 I.C.C. at 524. Yet, say the plaintiffs, despite this and a further finding that "the Transportation Company, with new routings and improved service, could undoubtedly wean substantial traffic away from NH and leave that already moribund carrier in perhaps an irretrievable situation," 327 I.C.C. at 522, the Commission imposed no such protective traffic and financial conditions for the interval prior to actual inclusion of NH — probably a fairly long one in view of reorganization problems under § 77 — as it did with respect to the Erie-Lackawanna, the Delaware & Hudson and the Boston & Maine. They ask in consequence that we enjoin consummation of the merger until NH is effectively protected by actual inclusion.

Much of the seeming anomaly dissolves quite speedily. From a practical standpoint the interim relationship of the Transportation Company to NH will be altogether different from its relationship to the three protected lines. The over-whelming likelihood is that the latter will remain significant competitors, probably as future components of the Norfolk & Western system, see Erie-Lackawanna R. R. v. United States, supra, 259 F.Supp. at 969 n. 4; although the Commission reserved jurisdiction to entertain petitions for their inclusion in the Transportation Company in the event of denial of their pending petitions for inclusion in the Norfolk & Western, 327 I.C.C. at 553, no one could have believed that to be the likely outcome. In contrast the expectation was that NH would become a part of the Transportation Company—indeed, there is rather general agreement that it must if it is to continue operations at all. It is thus somewhat unrealistic to suppose that the Transportation Company will immediately embark on a wholesale campaign of diversion from a future component, breaking the historic bonds between PRR and NH initially forged by geography and welded by millions of dollars of expenditures, only to renew them again some time hence; and plaintiffs' reliance on findings of the hearing examiners and the Commission with respect to the drastic effects of the merger on NH in the absence of any requirement of inclusion is wholly misplaced. But they argue that, despite the strong prospect of inclusion of NH in the Transportation Company, the latter nevertheless has an incentive to engage in some diversion since although PRR, NYC and the NH Trustees have agreed upon the purchase price, this is still an open issue in view of the dissatisfaction of NH bondholders, and diversion of NH freight revenues to NYC's competing service would benefit the Transportation Company both directly and by justifying what plaintiffs consider the unduly low figure to which the Trustees agreed. Moreover, they find a further incentive for diversion in the possibility that NH may never be included; although NH has a call on the Transportation Company, decision whether to exercise this depends on the course of the reorganization and the bankruptcy court may be persuaded, or compelled, to liquidate NH

rather than cause it to be sold to the Transportation Company as a going concern.

■■■■ The argument would seem to be sufficiently answered by the powers vested in the Commission under § 5(2) of the Interstate Commerce Act. It has been settled for four decades that the requirement of § 5(2) (b) and its predecessors that the Commission find the conditions of a merger to be just and reasonable makes it "the duty of the Commission to protect both the public and private interests" and to withhold approval of a transaction that is otherwise in the public interest unless it finds "that the consideration, terms and conditions thereof are just and reasonable" to the parties and holders of their securities. Cleveland, C., C. & St. L. Ry. v. Jackson, 22 F.2d 509, 510–511 (6th Cir. 1927); see United States v. Lowden, 308 U.S. 225, 233 n. 1, 60 S.Ct. 248, 84 L.Ed. 208 (1939); Schwabacher v. United States, 334 U.S. 182, 198–199, 68 S.Ct. 958, 92 L.Ed. 1305 (1948); 3–A Sharfman, The Interstate Commerce Commission 466–72 (1935). Combination of this general principle with the express authority now given by § 5(2) (d) to require merging carriers to include other railroads "upon equitable terms" would surely empower the Commission, if so advised, to base the acquisition price of NH upon a value not adversely affected by the NYC-PRR merger itself—whether by using the value of the property as of the date of the merger as a base, by adjusting subsequent earnings to restore diverted revenues, or by other appropriate means; the availability of such relief

differentiates NH sharply from the three protected roads. On being queried why this was not adequate protection, plaintiffs' attorneys answered that even though the Commission had the power we have indicated, there was no assurance it would use this, or use it fully, especially in view of the position of the NH Trustees that the agreement already concluded by them with NYC and PRR confers adequate protection;[2] they pointed also to the possibility that bondholders might prevail on the reorganization court to liquidate NH in order to realize on its valuable real estate holdings, in which event no acquisition under § 5(2) would occur. All this reflects a mistaken notion of NH's rights. The Commission is not under a mandate to protect against all diversion as a condition to the grant of immunity under the antitrust laws, as plaintiffs seem to think; it is concerned with diversion only as this bears on the "public interest," and that concept "has direct relation to adequacy of transportation service, to its essential conditions of economy and efficiency, and to appropriate provision and best use of transportation facilities," New York Central Sec. Corp. v. United States, 287 U.S. 12, 25, 53 S.Ct. 45, 48, 77 L.Ed. 138 (1932), with investor interest an element only insofar as its protection will serve to attain these goals. Decision on the degree of protection to be afforded is thus vested in the agency charged with responsibility for the transportation system, subject only to the usual limited judicial review. New York Central Sec. Corp. v. United States, supra, 287 U.S. at 29, 53 S.Ct. 45. We would agree with Judge Anderson's statement,

2. The agreement provides, § 9.2, that the purchase price shall be increased by:
   "An amount equal to the aggregate of the deficits in the New Haven's freight service net railway operating income for the calendar years subsequent to December 31, 1964 and for the partial year in which the Closing Date occurs, but in no event for any period subsequent to December 31, 1967; *provided, however,* that for purposes of this Section 9.2.4, (a) any such deficit for a calendar or partial year shall be limit-

ed to $1,750,000, (b) the aggregate of such deficits shall be limited to the aggregate of the net proceeds from all sales or other dispositions of Property made by the New Haven during the period from January 1, 1965 to the earlier of the Closing Date or December 31, 1967, and (c) the amount of any such deficit shall be computed in a manner consistent with the manner in which such deficit was determined by the Trustees for their annual reports for the New Haven to the I.C.C."

in authorizing the Trustees to proceed before the Commission, that it is for that agency "to determine in passing upon the plan for the inclusion whether these provisions [negotiated by the Trustees] adequately protect the estate for any possible losses in the time between consummation of the Penn-Central merger and inclusion of the New Haven, or whether additional terms are required."

In fact, however, we do not need to decide whether the condition with respect to inclusion of NH gives adequate protection since, in our view, plaintiffs are not now in a position to raise it. For we read the decisions of the Supreme Court as holding that on an application for merger of two carriers the interests of other carriers are to be represented by their managements and not by individual investors.

In Pittsburgh & West Virginia Ry. v. United States, 281 U.S. 479, 50 S.Ct. 378, 74 L.Ed. 980 (1930), the Pittsburgh, a minority stockholder in the Wheeling & Lake Erie, sought to enjoin an I.C.C. order authorizing the Wheeling to abandon its passenger station in Cleveland, Ohio, which was to be sold to a new terminal building company, and to use the new terminal and certain temporary facilities pending completion. The complaint alleged, *inter alia,* that the price being obtained by the Wheeling was inadequate and that the Commission had erred in holding it had no jurisdiction to consider that question. The Court held that the Pittsburgh "had no standing to bring this suit as one to set aside an order of the Commission." 281 U.S. at 486, 50 S.Ct. at 380. Although the Pittsburgh had been an intervenor before the Commission,[3] Mr. Justice Brandeis said, despite an arguably contrary earlier statement by him in The Chicago Junction Case, 264 U.S. 258, 268, 44 S.

---

3. The NH Bondholders Committee did not participate in the PRR–NYC merger proceeding in any way. Not until July 11, 1966, did Gruss & Son apply for leave to intervene for the purpose of filing a petition for reconsideration asking the Commission to modify Condition No. 8 "to require inclusion of the New Haven at the time of and as a condition precedent to merger of the Pennsylvania and the Central, holding further hearings thereon, and postponing consummation of said merger to permit the completion of such hearings and the inclusion of the New Haven at the time of and as a condition precedent to said merger." In its report on reconsideration the Commission dealt with this under the heading "Preliminary Matters," saying, 328 I.C.C. at 306–07:

"Gruss seeks intervention to press for the immediate inclusion of NH in the merged system. In the prior report, we acknowledged that inclusion of NH operations raises many problems, including those related to section 77 of the Bankruptcy Act, and that their resolution would require time and much personal endeavor on the part of all those interested, thus precluding immediate inclusion. By October 27, 1966, however, the parties concerned are to file for our approval, an inclusion plan covering the terms and conditions agreed upon, and in the absence of such a filing, we have the jurisdiction reserved to set the terms and conditions ourselves. It is therefore not possible to grant the immediate relief which Gruss seeks. But, as concluded in the prior report, withholding the public benefits otherwise obtainable through the merger is not warranted.

"Although the relief now requested is not justified, Gruss, as a substantial investor in NH securities, undoubtedly has an interest in the ultimate disposition of the bankrupt carrier's operations. Therefore, to obviate the need for another petition in order to participate in the inclusion proceeding, we will permit Gruss to intervene now and become a party herein, but deny the specific relief sought in its petition, without prejudice to its seeking such relief as it deems warranted in any proceeding involving the inclusion of NH's operations."

The Commission plausibly argues that this did not make Gruss & Son a party to the proceeding leading to the order here sought to be reviewed but only in the subsequent "inclusion" proceeding which, by order dated November 9, 1966, has been set for pre-hearing conference on December 19, 1966, and for hearing on January 16, 1967, in which the Committee has now sought to intervene. However, the *Pittsburgh & West Virginia* opinion makes it plain that even if Gruss was an intervenor, that would not be decisive in his favor.

Ct. 317, 68 L.Ed. 667 (1924), that such intervention did not entitle the Pittsburgh "to institute an independent suit to set aside the Commission's order in the absence of resulting actual or threatened legal injury to it." 281 U.S. at 486, 50 S.Ct. at 381. As to this, "the claim that the order threatens the Wheeling's financial stability, and consequently appellant's financial interest as a minority stockholder, is not sufficient to show a threat of the legal injury necessary to entitle it to bring a suit to set aside the order. This financial interest does not differ from that of every investor in Wheeling securities or from an investor's interest in any business transaction or lawsuit of his corporation. Unlike orders entered in cases of reorganization, and in some cases of acquisition of control of one carrier by another, the order under attack does not deal with the interests of investors. The injury feared is the indirect harm which may result to every stockholder from harm to the corporation." 281 U.S. at 487, 50 S.Ct. at 381. The "some cases" phrase was illuminated by a footnote referring to various I.C.C. decisions considering the fairness of acquisitions to security holders of the roads to be acquired.

A few years later, this court, speaking through Judge Mack, further elucidated and applied the distinction the Supreme Court had drawn. New York Central Securities Corp. v. United States, 54 F.2d 122 (S.D.N.Y. 1931). That suit attacked an order authorizing NYC to acquire control by lease of various railroads in which it was a majority and plaintiff a minority stockholder; the leases provided for payment of guaranteed annual dividends directly to the minority stockholders, with nothing paid to the lessors themselves. Judge Mack ruled that under the *Pittsburgh & West Virginia* decision plaintiff's interest as a stockholder in the lessee did not invest it with standing but its claimed injury as a stockholder in the lessors did, since that interest "is not merely derivative through its ownership of stock, but is an independent injury to itself as a member of a class created by the leasing agreements between lessors and lessee." 54 F.2d at 126. The Supreme Court agreed, 287 U.S. at 19–20. This same line of distinction was drawn in Alleghany Corp. v. Breswick & Co.; 353 U.S. 151, 77 S.Ct. 763, 1 L.Ed.2d 726 (1957), where the Court held that common stockholders of Alleghany Corporation did not have standing to obtain judicial review of I. C.C. orders authorizing a merger of railroads in whose common parent Alleghany was a large stockholder and determining that Alleghany was a carrier subject to regulation by the Commission and therefore exempted from the Investment Company Act, but that they did have standing to attack a further order in the exercise of the Commission's asserted jurisdiction authorizing Alleghany to issue a new convertible preferred stock which plaintiffs claimed would unfairly dilute their stock interests in Alleghany.

Plaintiffs' case is governed by *Pittsburgh & West Virginia* and the rulings in *Breswick* with respect to the merger and to the status of Alleghany. The PRR–NYC merger as proposed by the parties did not involve any transaction relating to NH. While it threatened injury to NH, it posed no "individualized threat," 353 U.S. at 173, 77 S.Ct. 763, to plaintiffs as distinguished from all other claimants against the NH estate. Protection of the interests of plaintiffs and all other NH creditors and stockholders was and is the responsibility of the Trustees in the § 77 proceeding. Trustees in such a proceeding have all the powers of a trustee under § 44 of the Bankruptcy Act, § 77(c) (2), and thus are "vested by operation of law with the title of the bankrupt as of the date of the filing of the petition * * *," § 70(a). Any rule permitting creditors or stockholders of a railroad affected by a proposed merger of other lines to interpose themselves in the main ring of the merger proceeding would be impracticable from an administrative standpoint. Such a proceeding is sufficiently complex without the Commission or a reviewing court also having to choose among the conflicting views of

security holders of third lines, some of whom regarded the merger with favor, others of whom opposed it and still others who wanted conditions of varying sorts. A carrier claiming to be adversely affected by a merger must speak at this stage with a single voice; what the voice shall say is normally determined in the case of a solvent carrier by its board of directors, and in the case of an insolvent one by its trustees subject to instruction by the reorganization court. While it is true in a pragmatic sense that the transaction may affect "the interests of investors" in the third carrier, it does so only in the way that every significant transaction does, and as the important one in the *Pittsburgh & West Virginia* case surely did. The Supreme Court's requirement is more stringent; in order for investors to have standing the order under attack must not merely affect but "deal with" their interests—their securities, rights, priorities and so on—as did the order in the *New York Central Securities* case and the order authorizing Alleghany to issue convertible preferred stock, or as the instant order did with respect to the stockholders of PRR and NYC.

· Plaintiffs contend that even if this be so, they have standing because the Trustees of NH have disabled themselves from effectively representing the bondholders' interests. This is claimed to be true because the agreement of the Trustees with NYC and PRR for inclusion of the properties of NH in the Transportation Company, initially embodied in a Memorandum dated December 22, 1964 and February 5, 1965, made it a condition of the purchaser's obligation to close that the former "shall not have made or filed any further statement, stipulation or other document in the pending Penn-Central merger proceedings before the I.C.C., or any judicial review thereof, other than in connection with (a) a position relating to the New Haven taken by any other party, or (b) a failure of the Examiners of the I.C.C. to find either that the New Haven should be included in such merger or that jurisdiction is to be retained for later determination of any petition by the New Haven for such inclusion, provided, however, that any such statement, stipulation or other document made or filed shall be consistent with the provisions and intent of this memorandum and the definitive agreement provided for herein." [4] This, plaintiffs say, and the Trustees do not dispute, required the latter to abandon their earlier insistence on actual inclusion as a condition precedent.

There is indeed authority, not cited to us, that an administrative agency may consider a stockholder as speaking on behalf of a corporation if it finds that the corporation has been prevented from doing so by another stockholder's abuse of power, just as a court of equity may do in a derivative action. W. R. Grace & Co. v. CAB, 154 F.2d 271 (2d Cir.), cert. granted sub nom. Pan American Airways Corp. v. W. R. Grace & Co., Eastern Air Lines v. W. R. Grace Co., 328 U.S. 832, 66 S.Ct. 1378, 90 L.Ed. 1608 (1946), dismissed as moot, Eastern Air Lines v. W. R. Grace Co., 332 U.S. 827, 68 S.Ct. 203, 92 L.Ed. 401 (1947). But that case cannot avail the plaintiffs here. Although the Memorandum of Understanding was announced by the Trustees and filed with the reorganization court on March 31, 1965 [5] and was annexed to the Trustees' brief filed with the Commission on August 16, 1965 replying to exceptions to the hearing examiners' report, no complaint as to the Trustees' abandonment of their insistence on inclusion as a condition precedent reached the Commission's ears until the Gruss petition of July 11, 1966. If we assume the *W. R. Grace* decision to be sound law, a person

---

4. Substantially the same provision is now § 11.7 of the definitive agreement dated April 21, 1966, as amended October 4, 1966.

5. We were advised by counsel for the NH Trustees that announcement was delayed until then because of the imminence of the hearing examiners' report, which was filed March 29, 1965. Counsel also advised that copies of the memorandum were sent to all persons on the court's service list, including the Committee.

desiring this extraordinary relief from an agency must act promptly; otherwise there would be no end to administrative proceedings already unduly prolonged. Moreover, and even more decisive, whatever be the case as to a solvent corporation, there can be no occasion for having an administrative agency determine whether trustees shall be ousted from speaking for a bankrupt estate; power to instruct them or to turn over the job to someone else is vested exclusively in the bankruptcy court.

█ Beyond all this, plaintiffs are precluded from advancing many if not all the contentions that were presented to us by the rule that a court reviewing administrative action will not, indeed save in extraordinary circumstances may not, consider a ground that was not timely presented to the agency. Unemployment Compensation Comm'n of Alaska v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946); Federal Powers Commission v. Colorado Interstate Gas Co., 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955). While the Interstate Commerce Act does not contain the provision on that score found in many federal regulatory statutes, "the law is substantially the same whether or not it happens to be embodied in such a statutory provision," 3 Davis, Administrative Law Treatise § 20.06, p. 92 (1958). The Supreme Court applied the usual principle to the Interstate Commerce Act in United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952). The practical necessity for generally barring a party from obtaining judicial review of questions that were not properly presented to the agency could hardly be better illustrated than by the belated presentation of plaintiffs' claims in this complicated case which has been pending more than four and a half years.

Although the Trustees of NH had initially sought inclusion as a condition precedent, no such contention was before the Commission when it made its report of April 1966, and plaintiffs knew or ought to have known this. Any entitlement of the plaintiffs to the relief they now seek must therefore rest on Gruss' petition for reconsideration, compare United States v. Great Northern Ry., 343 U.S. 562, 567 n. 3, 72 S.Ct. 985, 96 L.Ed. 1142 (1952). That would not suffice if the Commission refused to consider the petition on the basis that the issue had been decided in the initial report when no one was seeking inclusion of NH as a condition precedent, and that it was too late to raise the issue on reconsideration; if the Commission is to be able to perform the tasks assigned it by Congress, it must have authority to set a date after which arguments, save those which could not have been made before, must end. The supplemental report of the Commission, see note 3 supra, can be read as having said just that. But even if we read the report more generously to the plaintiffs, the only issue which Gruss presented to the Commission was that inclusion be made a condition precedent to consummation. Gruss never made any suggestions, such as those here advanced, that NH should receive interim protection similar to that accorded the Erie-Lackawanna, Delaware & Hudson and Boston & Maine, or that consummation be made contingent on the Transportation Company's accepting all subsequent losses of NH or so much of them as could be shown to stem from diversion of freight revenues by the merged company. Hence the only issue which is open on any view is the refusal to postpone consummation for the long period that will almost necessarily be required to dispose of the inclusion application, complicated as that is by the attendant problems under § 77 of the Bankruptcy Act, and on this the Commission acted reasonably and within its powers.[6]

6. Gruss' petition for reconsideration did claim that the duration of the inclusion proceeding would be greatly shortened if the purchase agreement, instead of providing for sale free of the lien of the first and refunding mortgage, were modified so that the Transportation Company would take over the properties subject to that lien, which "could then be satisfied in the bankruptcy proceedings by the payment

For this further reason as well as plaintiffs' lack of standing, there is no occasion to discuss their contentions with respect to St. Joe Paper Co. v. Atlantic Coast Line R. R., 347 U.S. 298, 74 S.Ct. 574, 98 L.Ed. 710 (1954), beyond saying it would be premature to conclude at this juncture either that the *St. Joe* decision necessarily precludes ultimate inclusion of NH in the Transportation Company or that the Transportation Company must be required to protect NH, apparently, on plaintiffs' view, so long as railroad operation continues, if *St. Joe* should turn out to have that result.

Summary judgment will therefore be entered dismissing the complaints. Treating the requests for a temporary injunction as embracing the lesser relief of a stay of consummation pending appeal to the Supreme Court in the event of a denial, we cannot conscientiously grant this under the criteria laid down in Virginia Petroleum Jobbers Ass'n v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958) and Eastern Air Lines, Inc. v. CAB, 261 F.2d 830 (2d Cir. 1958), which we summarized and applied in the *Erie-Lackawanna* action. Moreover, the merger is already stayed until January 1967, and if plaintiffs should appeal to the Supreme Court, they have ample time to apply there for a stay.

It is so ordered.

WEINFELD, District Judge (concurring).

I join in the opinion of the Court. However, I deem it appropriate to note an additional distinction between this case

and Erie-Lackawanna R. R. v. United States.[1] In the *Erie* case the Commission found that the public interest required protection of the three carriers against the adverse effects of the merger,[2] and as a condition of consummation imposed specific protective terms [3] which it subsequently revoked ex parte, in my view without adequate supporting findings, as to one condition and left for future determination as to others.[4] The terms and conditions as originally delineated by the Commission were a sine qua non of the merger.

In the instant case the Commission found that the overriding public interest requires the inclusion of New Haven, but left to the parties themselves the particular terms and conditions of the inclusion, subject to approval by the Commission and the Reorganization Court.[5] Should the parties fail to agree, the Commission has retained jurisdiction to impose terms and conditions and the consummation of the merger by Penn-Central constitutes assent thereto; in addition, the matter is still subject to approval by the Reorganization Court.[6]

The Commission recognizes that the Penn-Central merger "could undoubtedly wean substantial traffic away from New Haven and leave that already moribund carrier in perhaps an irretrievable situation." [7] Inclusion of New Haven to assure adequate freight and passenger service reflects the overriding public interest.[8] The future determination of the particular terms thereof will not affect the public interest, although to be sure security holders, creditors and others who

to the bondholders of its equitable equivalent * * *." We do not understand how the Commission could delegate to the bankruptcy court its responsibility to pass on the consideration the Transportation Company is to pay, see Schwabacher v. United States, supra, 334 U.S. at 197–198, 68 S.Ct. at 966–967; the Commission is bound to insure that the merged company is not burdened with an excessive obligation toward NH just as much as to see that NH is adequately compensated. If the proposal is more feasible than we now discern, Gruss is free to raise it in the inclusion proceeding.

1. 259 F.Supp. 964, S.D.N.Y., October 4, 1966.

2. 327 I.C.C. 475, 529, 532 (1966).

3. Id. at 532, 547 (1966).

4. 328 I.C.C. 329 (1966).

5. 327 I.C.C. 527, 553 (1966).

6. Ibid.

7. 327 I.C.C. 522 (1966).

8. 327 I.C.C. 526–27 (1966).

have a financial stake in New Haven's existence will be affected. If creditor and other interests are dissatisfied with the terms and conditions worked out by the Reorganization Trustee, there is the double-barrelled protection by the Commission and the Reorganization Court. And even if, unrealistically, we assume that both the Commission and the Reorganization Court will foist upon these plaintiff bondholders terms detrimental to them,[9] it does not follow that the public interest served by the New Haven will be adversely affected—on the contrary, not to include the Line in the merger may not only lead to its demise and the consequent elimination of its service to the public, but may well be totally destructive of the financial interest of some classes who have a stake in its survival.

In *Erie*, on the other hand, the terms and conditions left for future determination had, in my opinion, a vital bearing upon the public interest. Those terms, according to the Commission, were essential for the protection of the smaller carriers, the shippers, passengers and the communities they serve. By revoking them without adequate findings to support the change of position, the Commission undermined its own finding that the merger was consistent with the public interest only if the safeguards were provided; by its action it brought into question the validity of its order authorizing immediate consummation of the merger. By leaving for further consideration the terms and conditions it previously held essential to consummation, it exposed the three carriers during the period the matter would be under consideration to the same adverse factors it found militated against the merger, absent adequate protective terms. In that circumstance I questioned the power of the Commission under section 5(2) (b) of the Act [10] to defer until after consummation the determination of terms "found essential to validate this merger." [11]

9. Cf. § 77(e) of the Bankruptcy Act, 11 U.S.C. § 205(e); St. Joe Paper Co. v. Atlantic Coast Lines, 347 U.S. 298, 74 S. Ct. 574, 98 L.Ed. 710 (1954).

10. 49 U.S.C. § 5(2) (b).

11. Erie-Lackawanna R.R. v. United States, supra note 1, at p. 968 of 259 F.Supp.