IRVING S. RIBICOFF ET AL. *v.* DIVISION OF
PUBLIC UTILITY CONTROL ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NOS. 24430, 24549
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed October 15, 1980

*Irving S. Ribicoff* and *David Kotkin,* for the plaintiffs.

*Carl R. Ajello,* attorney general, *William B. Gundling,* assistant attorney general, *Robert S. Golden, Jr.,* assistant attorney general, and *Peter J. Jenkelunas,* assistant attorney general, for the named defendant.

*Barry S. Zitser* and *Valerie J. Bryan* for the defendant Division of Consumer Counsel.

*Rome, Case, Donnelly, Kennelly & Klebanoff* and *Louden, Byrne, Shechtman, Slater & Rose* and *George H. Shapiro,* of the Washington, D.C. bar, and *Linda A. Cinciotta,* of the Washington, D.C. bar, for the defendants The Times Mirror Company, Communications Properties, Inc., Hartford CATV, Inc. and Telesystems of Connecticut, Inc.

BORDEN, J. These motions present the question of whether the plaintiffs, who are minority shareholders in corporations holding cable television franchises, have sufficiently alleged aggrievement so as to maintain these appeals from administrative orders which involve revocation of the franchises. See General Statutes § 4-183 (a). The court holds that they have not.

These two cases are appeals under the Uniform Administrative Procedure Act (UAPA), General Statutes §§ 4-166 through 4-189, from certain decisions of the defendant Division of Public Utility Control (DPUC) rendered in proceedings initiated by the DPUC. Those proceedings were to investigate the suitability of the defendant The Times Mirror Company (Times Mirror), as owner, through the corporate subsidiaries mentioned immediately below who are also defendants, of two cable television franchises in view of Times Mirror's acquisition of The Hartford Courant (Courant), a newspaper. Times Mirror owns the majority and controlling stock of the defendant Community Properties, Inc. (CPI).[1] CPI in turn owns the majority and controlling stock of Hartford CATV, Inc. (HCTV) and Telesystems of Connecticut, Inc. (TOC). HCTV and TOC hold the cable television franchises in question. The plaintiffs, Irving S. Ribicoff and David Kotkin, own 10 percent of the common stock of HCTV and 2 percent of the common stock of TOC. The plaintiff Ribicoff has been a director of HCTV since 1967 and its president since 1976.

On March 7, 1980, the DPUC decided in effect that Times Mirror, because of its cross-ownership of a newspaper and cable television franchises, was an unsuitable owner of the franchises and ordered it either to divest itself of the Courant or divest itself of the subsidiaries owning the franchises, and provided that if this were not done by April 1, 1981,[2] the franchises would be revoked. The plaintiffs, who were denied party status in the administrative proceedings but were permitted to participate as intervenors, filed

---

[1] The acquisition by Times Mirror of this controlling interest in CPI was approved by the DPUC on July 13, 1978, with the requirement that if Times Mirror thereafter acquired or contemplated acquiring any Connecticut media it notify the DPUC. In response to Times Mirror's notice of July 12, 1979, to the DPUC of its contemplated acquisition of the Courant, the DPUC initiated the administrative proceedings below.

[2] This date has been extended by the court.

petitions for reconsideration and rehearing, which were denied. The plaintiffs filed these appeals from the decision by the DPUC and from the denials of the petitions for reconsideration. Times Mirror, CPI, HCTV and TOC also took appeals. The appeals of the plaintiffs and those of the Times Mirror group have been consolidated.

The DPUC moves to dismiss the appeals of the plaintiffs, Irving S. Ribicoff and David Kotkin, on the ground that they are not aggrieved as a matter of law.[3]

Since aggrievement by an administrative decision is a prerequisite to the trial court's subject matter jurisdiction over an appeal; *Beckish* v. *Manafort,* 175 Conn. 415, 419, 399 A.2d 1274 (1978); a motion to dismiss under Practice Book §§ 142 and 143 is a proper way to raise the issue of the sufficiency of the allegations of aggrievement. Analogous procedures were countenanced under the prior practice. See *Old Rock Road Corporation* v. *Commission on Special Revenue,* 173 Conn. 384, 377 A.2d 1119 (1977) (plea in abatement to appeal from administrative order); *Nader* v. *Altermatt,* 166 Conn. 43, 347 A.2d 89 (1974) (motion to erase and demurrer to appeal from administrative order) .

"The question of aggrievement is essentially one of standing . . . . The trial court must be satisfied, first, that the plaintiff alleges facts which, if proven, would constitute aggrievement as a matter of law, and, second, that the plaintiff proves the truth of those factual allegations. . . . 'The mere statement that the appellant is aggrieved, without supporting allegations as to the particular nature of the aggrievement, is insufficient.' . . . 'The concept of standing as presented here by the question of aggrievement is

---

[3] The separate but consolidated appeals of Times Mirror, CPI, HCTV and CPI are not challenged by the DPUC's motions herein.

a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal an order.' . . .

"This court has considered at length the criteria by which the question of aggrievement is to be determined. In *Nader* v. *Altermatt*, supra, 51, we stated: 'The fundamental test [of aggrievement] . . . encompasses a well-settled twofold determination. First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' " (Citations omitted.) *Beckish* v. *Manafort*, supra, 419–20. It is also clear from the court's opinion in *Nader* v. *Altermatt*, supra, 55, when placed next to Justice Bogdanski's dissent; id., 66; that aggrievement is a threshold issue which must be determined without reference to whether or not the claims of error are valid.

Since by these motions the court is required to assess the legal sufficiency of the allegations of aggrievement, the standards developed for the court's identical task under a motion to strike contesting the legal sufficiency of the allegations of a complaint are appropriate. The court must take the challenged factual allegations and the facts necessarily implied therefrom, construed most favorably to the pleader, as true. *Amodio* v. *Cunningham*, 182 Conn. 80, 82, 438 A.2d 6 (1980); *Therrien* v. *Safeguard Mfg. Co.*, 180 Conn. 91, 93, 429 A.2d 808 (1980). The pleading is tested by the facts provable under it, but unsupported conclusions of law are not admitted. *Fraser* v. *Henninger*, 173 Conn. 52, 60, 376 A.2d 406 (1977).

Those allegations of the plaintiffs which may fairly be characterized as asserting aggrievement may be summarized as follows: (1) the plaintiffs' application for party status was denied, although their rights were being determined and their participation as parties was necessary; (2) their motion to dismiss HCTV and TOC as parties was denied, although neither company was part of Times Mirror's acquisition of the Courant; (3) the remedy of revocation deprived them of their rights and property in HCTV and TOC; (4) their rights and property were deprived without due process; (5) they were exposed to taking of their property rights in HCTV and TOC without due process and without compensation; (6) HCTV and TOC were exposed to a taking of their property without due process and without compensation; (7) the possibility of revocation exposed them to the chilling effect on their stock's value; (8) the possibility of revocation exposed HCTV and TOC to the chilling effect on the value of the property of HCTV and TOC; (9) they were exposed to a taking of their property without due process and without compensation, although they had no part in Times Mirror's acquisition of the Courant; (10) HCTV and TOC were exposed to a taking of their property without due process and without compensation, although HCTV and TOC had no part in Times Mirror's acquisition of the Courant; (11) by DPUC's failing to designate a method of enforcing its decision of divestiture except by revocation, they are deprived of their property rights and privileges; (12) the remedy of revocation to enforce the decision of divestiture deprives them of their property without providing the means to protect themselves against a lack of divestiture by April 1, 1981; (13) DPUC refused, after its decision of March 7, 1980, to hear them regarding the remedy of revocation in order to make it effective, workable, enforceable and constitutional; (14) their rights were confiscated without due process by DPUC's refusal to hear any evidence or

argument with regard to a decision of DPUC based on no previous evidence in earlier hearings of November and December, 1979, and raised for the first time after the conclusion of those hearings; those earlier hearings being the hearings which resulted in the decision of March 7, 1980; (15) the franchises of HCTV and TOC were revoked on the assumption that CPI owned 100 percent of the stock of HCTV and TOC; and (16) the probable revocation of the HCTV and TOC franchises results in injury to rights and property of the plaintiffs.

Allegations (6), (8) and (10) above do not mention the plaintiffs' interests or rights in any way. They refer by their terms only to the property of HCTV and TOC. Thus these allegations, which assert only injury to corporations of which the plaintiffs are minority shareholders, fail to allege in the plaintiffs "a specific, personal and legal interest in the subject matter of the decision" or that any "specific personal and legal interest [of the plaintiffs] has been specially and injuriously affected by the decision." *Beckish* v. *Manafort,* supra, 420. Allegation (4) is nothing more than a general, unsupported conclusion of law and is, therefore, insufficient. *Fraser* v. *Henninger,* supra.

Allegations (3), (5), (7), (9), (11), (12) and (16) amount in substance to allegations that the plaintiffs' rights and property in HCTV and TOC were deprived, taken without due process or compensation, and reduced or chilled in value. These allegations focus solely on the consequences to the plaintiffs' rights and property in HCTV and TOC of the DPUC decision. Stripped of the rhetoric, they assert damage by way of a taking,[4] or by way of substantial reduction in value, to the

---

[4] It is clear from the complaint that the taking asserted is not that the plaintiffs would be deprived of ownership of the shares. Rather, it appears to be that the franchise revocations would cause the value of the shares to be substantially reduced or totally eliminated.

plaintiffs' minority shares in HCTV and TOC by virtue of the risk or probability of revocation of HCTV's and TOC's franchises.[5]

There is no controlling Connecticut authority which addresses whether this kind of economic injury resulting from this kind of administrative action confers aggrievement on these shareholders.[6] The court recognizes "that the issue of aggrievement is not a federal issue, but a requirement of Connecticut law." *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 703, 345 A.2d 563 (1974). Nevertheless, our Supreme Court has on occasion looked to the federal concept of standing to elucidate its Connecticut counterpart of aggrievement. "The concept of standing as presented here by the question of aggrievement is a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal . . . . The 'fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated.' *Flast* v. *Cohen,* 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 [1968]." *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 484–85, 338 A.2d 497 (1973). The same policy underlies the concepts of aggrievement to appeal and standing to sue: that only those with a genuine, specific, personal and legitimate stake in the

---

[5] I take no cognizance of the plaintiffs' claim in their brief that, because of their central role in organizing HCTV and TOC, they are in effect partners in the franchises themselves rather than shareholders in the corporations owning them. No such facts or claim are in the complaint; they are not provable under it; and the plaintiffs disclaimed reliance on them in oral argument. Nor do I take cognizance of DPUC's claim in its brief that the plaintiffs have not shown aggrievement in fact because the injury they allege is too speculative. That would be a matter for proof at trial, rather than for determination under a motion to strike.

[6] *Nader* v. *Altermatt,* 166 Conn. 43, 347 A.2d 89 (1974), sheds little if any light on the issue. There the court dealt only with whether the claims of aggrievement had been proven; it was not required to address the question of what a minority shareholder must allege for aggrievement by an order directed at his corporation.

subject matter involved are entitled to set the judicial machinery in motion. See *Flast* v. *Cohen,* supra; *Nader* v. *Altermatt,* supra; *Hartford Kosher Caterers, Inc.* v. *Gazda,* supra. It is appropriate, therefore, to look to the federal cases on standing and the strength of their reasoning for guidance in deciding the issue before the court.

In *Pittsburgh & W. Va. Ry. Co.* v. *United States,* 281 U.S. 479, 50 S. Ct. 378, 74 L. Ed. 980 (1930), the court held that a minority shareholder of a railroad corporation has no standing to challenge an Interstate Commerce Commission order permitting the corporation to abandon certain lines and to lease a station. The court, through Justice Brandeis, said: "[T]he claim that the order threatens the [company's] financial stability, and consequently appellant's financial interest as a minority stockholder is not sufficient to show a threat of the legal injury necessary to entitle it to bring a suit to set aside the order. This financial interest does not differ . . . from an investor's interest in any business transaction or lawsuit of his corporation. Unlike orders entered in cases of reorganization, and in some cases of acquisition of control of one carrier by another, the order under attack does not deal with the interests of investors. The injury feared is the indirect harm which may result to every stockholder from harm to the corporation. Such stockholder's interest is clearly insufficient to give the [stockholder] a standing independently to institute suit to annul this order." Id., 486–88. See also *Ash* v. *International Business Machines, Inc.,* 353 F.2d 491 (3d Cir. 1965), in which the court held that a stockholder of one corporation has no standing to sue a competing corporation for violations of the Clayton Act which harm the value of his stock. But see *Alleghany Corporation* v. *Breswick & Co.,* 353 U.S. 151, 77 S. Ct. 763, 1 L. Ed. 2d 726 (1957) (Frankfurter, J.), in which the court held that minority common stockholders of a corporation do have standing to

challenge an ICC order approving a new preferred stock issue because of the threatened dilution of their equity in the company as common stockholders. See also the opinion of Chief Justice Hughes for a divided court in *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 56 S. Ct. 466, 80 L. Ed. 688 (1936), holding that a minority stockholder has standing to sue his corporation and the government in equity to prevent the corporation from carrying out an allegedly unconstitutional contract with the government "when their corporation refuses to take suitable measures for its protection . . . ." Id., 319. Based on the same principle is our own rule that a stockholder may bring a derivative action "based upon the fact that the corporation will not or cannot sue for its own protection." *Barrett* v. *Southern Connecticut Gas Co.,* 172 Conn. 362, 370, 374 A.2d 1051 (1977).

The reasoning of and distinctions drawn by these cases apply here. The plaintiffs claim in effect that the revocation, or risk thereof, of the franchises of HCTV and TOC will, taken at its worst, render their stock worthless. But this is not a consequence of any administrative action aimed at them or at their shares. It is a consequence solely of administrative action aimed at corporations of which they are minority shareholders. If the value of their stock is reduced it can only be because an asset of the corporation is lost. Under these circumstances the plaintiffs' "financial interest as . . . minority stockholder[s] is not sufficient to show a threat of the legal injury necessary to entitle [them] to [appeal] to set aside the order. This financial interest does not differ . . . from an investor's interest in any business transaction or lawsuit of his corporation. . . . [T]he order under attack does not deal with the interests of investors. The injury feared is the indirect harm which may result to every stockholder from harm to the corporation. Such stockholder's interest is clearly insufficient

to give the [plaintiffs] a standing independently to [appeal] to annul this order." *Pittsburgh & W. Va. Ry. Co.* v. *United States,* supra, 487–88.

This is not a case in which, like *Alleghany Corporation* v. *Breswick & Co.,* supra, the administrative order affects the stock ownership directly by threatening a dilution of the corporate equity to which it lays claim. Here, the plaintiffs' ownership interests in their corporations remain unaffected by the order. Nor is this a case in which, like *Ashwander* v. *Tennessee Valley Authority,* supra, minority shareholders are challenging an administrative order because their corporation refuses to do so for its own protection. Here both HCTV and TOC have appealed and are pursuing those appeals vigorously.

Allegation (1), in effect that the plaintiffs are aggrieved by the DPUC's denial of their motion to be made parties rather than intervenors, is insufficient in light of the allegation that they were granted intervenor status. Although § 16-1-19 of the Regulations of Connecticut State Agencies limits participation before the DPUC by an intervenor to "that degree of involvement . . . that the presiding officer shall expressly permit," the plaintiffs do not allege or appear to claim in any way that their status as intervenors resulted in any actual limitation on their degree of participation in the proceedings. Indeed, both complaints allege that "[t]he Authority conducted a hearing on October 30, 31, November 1 and 2, 1979, and afforded an opportunity to all admitted parties and intervenors to submit briefs and offer oral argument at a hearing held December 13, 1979."

Allegation (2), the denial of their motion to dismiss HCTV and TOC as parties, also fails to allege sufficient aggrievement. Other than the fact that it was the plaintiffs who made the motion, the court is hard pressed to perceive how they are harmed by the presence of their corporations as parties to the pro-

ceedings. Given that it is those very corporations whose franchises were the subject matter of the proceedings and are subject to revocation by the DPUC's final decision, the court cannot conceive how the proceedings could be valid without them as parties.

Allegations (13), (14) and (15) focus, not on the DPUC's decision of March 7, 1980, but on its action after that decision in denying the plaintiffs' petition for a rehearing. All of them, however, rest on the premise that the plaintiffs have a legally protectable personal interest which was harmed by the actions of the DPUC complained of by those allegations. Allegation (13) complains of the DPUC's refusal to hear the plaintiffs regarding the remedy of revocation; allegation (14) complains that their rights were confiscated without due process by the DPUC's refusal to hear evidence or argument. It is apparent that both these allegations invoke aggrievement based on the effect on the plaintiffs of revocation of the franchises. But that revocation does no more than bring us back to the claim that the plaintiffs, as minority shareholders, are aggrieved by the loss of their corporations' assets. That is not legal aggrievement. *Pittsburgh & W. Va. Ry. Co.* v. *United States,* supra. Allegation (15), construed favorably to the plaintiffs, asserts no more than that the DPUC, by erroneously assuming that CPI owned 100 percent of the stock of HCTV and TOC, overlooked the plaintiffs' minority interest in ordering revocation. Like allegations (13) and (14), however, that only invokes aggrievement by virtue of indirect harm to the plaintiffs' minority interest and is, likewise, insufficient.

The plaintiffs argue that under General Statutes § 16-35 they are persons who "ought to have been made . . . part[ies]" and are thus, under § 16-35 and General Statutes § 4-166 (5) which is part of the UAPA, aggrieved as a matter of law. This argument rests on the claim that, under the DPUC's regula-

tions, they should have been admitted as parties because their "legal rights, duties or privileges" were determined by the DPUC. See § 16-1-2 (g) of the Regulations of Connecticut State Agencies defining "[p]arty" as, inter alia, one "whose legal rights, duties or privileges will be determined by . . . [the] decision . . . " of the DPUC. This argument, however, like the arguments pressed on the specific allegations of aggrievement, rests on the erroneous premise that the DPUC decision ordering revocation of the franchises of HCTV and TOC was determining legal rights, duties and privileges of minority shareholders in those corporations. Nor does the fact alone that the plaintiffs were granted intervenor status in the administrative proceedings confer aggrievement on them to appeal. See *Pittsburgh & W. Va. Ry. Co.* v. *United States,* supra, 486.

The plaintiffs also argue that they are aggrieved because the interests of Times Mirror, CPI, HCTV and TOC, on one hand, and their interests, on the other hand, are in conflict; and that there is a conflict between Times Mirror and CPI, on one hand, and HCTV and TOC, on the other. This claim rests on the further claims that Times Mirror has said that, faced with the ultimate choice of retaining the Courant or the franchises, it will retain the Courant and divest itself of the franchises; that, since CPI controls HCTV and TOC and since HCTV and TOC are represented by the same counsel as are Times Mirror and CPI, HCTV and TOC are incapable of protecting themselves. Assuming, although it is not free from doubt, that these facts are provable under the allegations of aggrievement, the court concludes that they are insufficient as a matter of law. HCTV and TOC are, as noted above, appealing in their own right. They are incapable of protecting themselves only in the sense that they, like any closely held corporations, must follow the will of their majority and controlling stockholders and directors. The fact that that will

may not coincide with that of their minority stockholders does not convert the minority's dissatisfaction into legal aggrievement. The plaintiffs' claim amounts to a potential, deep difference of business judgment stemming from potential, deep differences of interests between them and the majority interests. It has long been held, however, that such differences do not confer standing. "[Stockholders] cannot secure the aid of a court to correct what appears to them to be mistakes of judgment on the part of officers. This rule applies whether the mistake is due to error of fact or of law, or merely through bad business judgment. It applies . . . where the mistake alleged is the refusal to assert a seemingly clear cause of action." *Ashwander* v. *Tennessee Valley Authority,* supra, 343 (Brandeis, J., concurring).[7] This oft-stated rule was applied in *Ash* v. *International Business Machines, Inc.,* supra, where in the context of standing of a shareholder to bring a derivative action the court pointed out that such standing can only be maintained under limited circumstances such as bad faith, breach of trust, bias, or other wrongdoing or compelling circumstances on the part of the directors of the corporation. Id., 493. Considering the close similarity between the concepts of aggrievement and standing, the same kinds of limitations should apply to the right of a minority shareholder to appeal a decision, aimed at his corporation, which does not dilute his equity in the corporation. See *Alleghany Corporation* v. *Breswick & Co.,* supra. The plaintiffs make no such allegations here.

Accordingly, the motions to dismiss are granted.

---

[7] This is not to suggest that plaintiffs' minority interests exist subject to the unbridled whim of the majority. A dominant or majority shareholder bears a fiduciary duty to the corporation and its minority shareholders. *Pepper* v. *Litton,* 308 U.S. 295, 60 S. Ct. 238, 84 L. Ed. 281 (1939); *Perlmann* v. *Feldmann,* 219 F.2d 173 (2d Cir. 1955); *Cathedral Estates* v. *Taft Realty Corporation* 157 F. Sup. 895 (D. Conn. 1957). But there is no claim here of a violation of that duty.