Miriam **ABRAMSON**, Rose Bell Green, David Bellows, Mortimer J. Green, Mason Bogen, Elizabeth Medrich, Philip Liebhaber, Mollie Blankfein, Robert O. Sinclare, Heilbrunn & Co. for themselves and on behalf of all other second preferred stockholders of Western Maryland Railway Company, similarly situated, Plaintiffs,

v.

**WESTERN MARYLAND RAILWAY COMPANY, Defendant.**

Civ. A. No. 20147.

United States District Court
E. D. Pennsylvania.

June 22, 1956.

Goldstein & Barkan, Philadelphia, Pa., for plaintiffs.

William B. Gold, Jr., Philadelphia, Pa., for defendant.

GRIM, District Judge.

Under the law of Pennsylvania an owner of stock of a Pennsylvania railroad corporation is entitled to a certain form of notice of corporation meetings setting forth, among other things, rights and remedies of dissenting stockholders when the corporation at a meeting proposes to take action which would adversely affect the stockholder. The Pennsylvania statute also provides that if the stockholder prior to or at the meeting files written objection to the proposed action and if he does not vote in favor of the action he may within twenty days after the meeting make written demand for, and will thereupon be entitled to recover from the corporation, the fair value of his shares. Act of May 3, 1933, P.L. 227, sec. 2(d), as amended by the Act of June 12, 1947, P.L. 587, and the Act of May 23, 1949, P.L. 1662. 15 P.S. § 224(d).

8. Foy v. Mutual Life Insurance Co., D.C.N.D.Fla.1955, 127 F.Supp. 916.

A meeting of the stockholders of defendant corporation[1] was held October 10, 1955, at which meeting action was taken by a large majority of the stockholders to issue additional common stock of defendant corporation and change its par value, which adversely affected the plaintiff stockholders in the present action.[2] Plaintiffs did not receive the statutory form of notice of the October 10th meeting. In the present diversity action plaintiffs request that defendant corporation be required to give plaintiffs the statutory form of notice of the October 10th meeting nunc pro tunc and to give plaintiffs the right to demand and receive the fair value of their stock.

Defendant has filed a motion to dismiss the action, contending among other things that all required notice was given and that the meeting of October 10, 1955, and the attempted change in the corporation's capital stock structure made at the meeting were not governed by the Pennsylvania statute, supra, but by Section 20a of the Interstate Commerce Act, 49 U.S.C.A. § 20a, since defendant is a "carrier" within the meaning of that section. Defendant contends that under the provisions of Section 20a, plaintiffs were not entitled to the Pennsylvania statutory form of notice of the meeting nor indeed to any notice, and that their right, if any, to receive the fair value of their stock is a matter to be determined alone by the Interstate Commerce Commission.[3]

In Schwabacher v. United States, 1948, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305, the Chesapeake and Ohio railroad, a Virginia corporation, had merged with the Pere Marquette railroad, a Michigan corporation. Under the law of Michigan and the provisions of the Pere Marquette charter when a "winding up" of the corporation should occur (which did occur when the Pere Marquette merged with the Chesapeake and Ohio), dissenting stockholders of Pere Marquette had the right to demand and be paid from the merged corporation the full value of their stock. When the application for approval of the merger of the two railroads was filed with the Interstate Commerce Commission, some dissenting stockholders intervened in the proceeding requesting that the Interstate Commerce Commission make a determination as to the liability of the merged corporation to pay to the dissenting stockholders the value

1. Defendant railroad corporation is incorporated both in Maryland and Pennsylvania. It consists of four Pennsylvania corporations, three Maryland corporations, and one incorporated in both states, which were consolidated by an Agreement of Consolidation dated January 23, 1917.

2. There is some doubt whether plaintiffs were actually affected adversely but for the purposes of this opinion it will be assumed that plaintiffs have been affected adversely.

3. Section 20a of the Interstate Commerce Act provides: " * * * (2) It shall be unlawful for any carrier to issue any share of capital stock * * * even though permitted by the authority creating the carrier corporation, unless and until, and then only to the extent that, upon application by the carrier, and after investigation by the commission of the purposes and uses of the proposed issue and the proceeds thereof * * * the commission by order authorizes such issue * * *. The commission shall make such order only if it finds that such issue * * * (a) is for some lawful object within its corporate purposes, and compatible with the public interest, which is necessary or appropriate for or consistent with the proper performance by the carrier of service to the public as a common carrier, and which will not impair its ability to perform that service, and (b) is reasonably necessary and appropriate for such purpose. * * *
"(6) Upon receipt of any such application for authority the commission shall cause notice thereof to be given to and a copy filed with the governor of each State in which the applicant carrier operates. The railroad commissions, public service, or utilities commissions, or other appropriate State authorities of the State shall have the right to make before the commission such representations as they may deem just and proper for preserving and conserving the rights and interests of their people and the States, respectively, involved in such proceedings. The commission may hold hearings, if it sees fit, to enable it to determine its decision upon the application for authority."

of their stock. The Commission, however, declined to decide the "Michigan law question" of what the rights of dissenting stockholders were, but instead stated in its opinion that the rights of dissenting stockholders to recover the value of the stock would have to be determined by the courts.

The dissenting stockholders then filed a suit in a United States District Court to review and set aside the order of the Interstate Commerce Commission contending that the Commission had erred in not making a determination as to their claim to receive the fair value of their stock. A court of three judges sustained the order. Upon appeal to the Supreme Court the order of the Commission and the three-judge court was reversed. The problem of the rights of dissenting stockholders and their right, if any, to recover the value of their shares was referred back to the Interstate Commerce Commission for decision. The Supreme Court pointed out that under the terms of Section 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5, under which the Commission had acted, the authority of the Commission was "exclusive and plenary". The Court concluded from this that the courts have no original jurisdiction to determine rights of dissenting stockholders resulting from a merger of interstate railroad corporations.

Section 20a of the Interstate Commerce Act, which applies to cases where railroad corporations apply for authority to issue new shares of stock, and under which the Commission acted in the present case, provides: "(7) The jurisdiction conferred upon the commission by this section shall be exclusive and plenary, and a carrier may issue securities * * in accordance with the provisions of this section without securing approval other than as specified herein."

It is my opinion that the problems presented in the Schwabacher case and the case at bar are so similar that the decision in the Schwabacher case controls here.

It would appear that the only notice required of a proceeding under Section 20a is a notice to the governor of each state in which the carrier operates. Section 20a provides that "The railroad commissions * * * utilities commissions, or other appropriate State authorities of the State shall have the right to make before the commission such representations as they may deem just and proper for preserving and conserving the rights and interests of their people and the States, respectively, involved in such proceedings." It does not provide, as does Section 5 which applied to the Schwabacher case, that the Commission "shall afford reasonable opportunity for interested parties to be heard." However, it would appear that under the theory of the Schwabacher case plaintiffs can bring their action before the Commission under Section 13(1) of the Interstate Commerce Act, 49 U.S.C.A. § 13(1), which provides that "Any person, firm, corporation, company, or association * * * complaining of anything done or omitted to be done by any common carrier subject to the provisions of this chapter in contravention of the provisions thereof, may apply to said commission by petition * * *."

The proper tribunal for the determination of plaintiffs' claims was the Interstate Commerce Commission.

Defendant's motion to dismiss the action will be granted.

I express no opinion as to whether any application plaintiffs might hereafter make to the Commission would be timely.