**Frieda SUFFIN, Plaintiff,**

v.

**The PENNSYLVANIA RAILROAD COMPANY, the Pennsylvania Company and Norfolk and Western Railway Company, Defendants.**

**Civ. A. No. 3342.**

United States District Court
D. Delaware.

Nov. 13, 1967.

Irving Morris, Cohen, Morris & Rosenthal, Wilmington, Del., Abraham L. Pomerantz and Daniel W. Krasner, Pomerantz, Levy, Haudek & Block, New York City, of counsel, for plaintiff.

William S. Potter and Richard L. McMahon, Potter, Anderson & Corroon, Wilmington, Del., Margaret P. Allen, James N. Mullen and David L. Wilson, Philadelphia, Pa., of counsel, for defendants Pennsylvania R. Co. and Pennsylvania Co.

James M. Tunnell, Jr., and Richard L. Sutton, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Francis S. Bensel, Frank H. Heiss and Richard J. Concannon, Kelley, Drye, Newhall, Maginnes & Warren, New York City, of counsel, for defendant Norfolk & Western Ry. Co.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is a derivative stockholders suit. The complaint was filed by a stockholder of the defendant, Norfolk and Western Railway Company (N & W). The other

defendants are The Pennsylvania Railroad Company (PRR) and The Pennsylvania Company (Pennsylvania), a holding company of the PRR.

Defendants PRR and Pennsylvania have filed a joint motion to dismiss the action and defendant N & W has filed a separate motion to dismiss. Both motions state the same grounds for dismissal, namely: (1) that the Court lacks jurisdiction over the subject matter of the suit, (2) that the venue is improper, and (3) that the plaintiff has failed to join the United States as an indispensable party defendant.

The gravamen of the complaint is that an agreement entered into between defendants PRR and N & W for the exchange of N & W stock held by PRR for certain N & W debentures is unduly advantageous to the PRR; that the boards of directors of the PRR and the N & W were "interlocked", thereby precluding the N & W directors an unfettered exercise of their discretion; and that the PRR, as the majority and dominant N & W stockholder, breached its fiduciary duty to the other N & W stockholders in procuring an agreement so highly favorable to it.

Before passing to the issues raised by the complaint and the motions to dismiss, a brief recital of the events which have preceded the present litigation is essential.

The general thrust of the National Transportation Policy with respect to railroads during the past several years, has been the conglomeration of many small, disparate and failing railroads into strong, economically viable railroad systems. Pursuant to this goal, the Interstate Commerce Commission (ICC) approved the merger of five struggling roads with the financially strong Norfolk and Western Railway Company (N & W), 324 ICC 1 (1964).[1] In view, however, of the pending merger between the Pennsylvania and New York Central Railroads, the Interstate Commerce Commission conditioned its approval of the Norfolk and Western merger upon the divestiture by the Pennsylvania Railroad Company (PRR) of all of its substantial stockholdings in the N & W ("N & W MERGER"), 324 ICC 48.[2] The Commission did not specifically indicate the manner in which the divestiture was to be effected, but instead granted the PRR ten years in which to divest itself of all of its N & W securities. In addition, the ICC retained jurisdiction to supervise "an orderly divestiture within the 10-year period or such other period as may hereafter be found necessary for the satisfactory accomplishment thereof." 324 ICC 48, supra.

Subsequently, in April 1966, in furtherance of the proposed merger and in accordance with the divestiture requirement of the ICC decision, the N & W filed, and the Commission approved, a plan for the issuance of certain N & W debentures in exchange for 800,000 shares of N & W common stock held by the PRR ("N & W Securities"), 328 ICC 884 (1966).[3]

---

1. The five railroads to be merged into the Norfolk and Western system were: New York, Chicago and St. Louis Ra'lroad Company; Wabash Railroad Company; Sandusky line of the Connecting Railway Company; Akron, Canton & Youngstown Railroad Company; and the Pittsburgh and West Virginia Railway Company.

2. The Pennsylvania held, on March 1, 1964, 243,419 shares (39.55%) of N & W's then outstanding Adjustment Preferred Stock; 71,100 shares (15.51%) of N & W's then outstanding 6% Cumulative Preferred Stock, and 2,342,784 shares (31.62%) of N & W's then outstanding Common Stock (324 ICC 34).

3. Under the terms of the approved plan, the N & W was granted authority "(1) to issue not exceeding $104 million aggregate principal amount of 15-year 4⅝-percent subordinated convertible debentures, in not more than 10 series, in exchange for not exceeding 800,000 shares, in the aggregate, of its outstanding $25-par value common stock owned by the Pennsylvania Company at the rate of $13,000 principal amount of debentures for each 100 shares of common stock, and (2) to issue, or sell from its treasury, not exceeding, in the aggregate, 800,000 shares of its $25-par value common stock in conversion of not exceeding

It is the terms of this exchange plan of which plaintiff complains in the instant lawsuit.

The major thrust of plaintiff's argument, and the position which she has consistently urged throughout the proceedings is that the authority granted by the ICC for the PRR—N & W stock—debenture exchange, 328 ICC 884, supra, must be considered separately and distinctly from the previous order conditionally approving the N & W merger, 324 ICC 1, supra.[4] in fact, plaintiff has conceded that if the "N & W Securities" order be deemed a part and parcel of the "N & W Merger" decision, her suit must be dismissed.[5] In addition, plaintiff concedes that a derivative stockholders' suit cannot be used as a device to challenge the plenary and exclusive jurisdiction of the Interstate Commerce Commission.

At the outset, plaintiff requested three alternative forms of relief: (1) rescission of the agreement of September 22, 1964 between PRR and N & W subsequently approved by the ICC; (2) a temporary and permanent injunction forbidding defendants to take any further steps in implementation of the said agreement, and (3) damages in the form of an accounting by PRR to N & W for the former's profits and the latter's losses. Subsequently, however, plaintiff abandoned her requests for rescission and injunctive relief.

While recognizing that no injunction or rescission order could issue from this Court, plaintiff now contends that an award of money damages would be proper and would not constitute a revocation by a one judge District Court of the Commission's order. The Court fails to see how plaintiff's choice of remedy in this case can confer jurisdiction where it does not otherwise exist.

Further, to argue that the ICC's "N & W Securities" opinion is to be viewed as separate and distinct from their "N & W Merger" decision is to engage in sophistic semanticism, ignoring several salient portions of the "N & W Merger" decision.

Initially, the Commission granted approval of the N & W merger only on the specific condition, inter alia, that the PRR "divest itself of its stockholdings in both the Norfolk and Western and the Wabash over a period of time. * * *" 324 ICC 1, pp. 33–34. Secondly, the ICC apparently contemplated an exchange agreement similar to the one presently before the court as a legitimate means of effectuating the required divestiture, 324 ICC 41. Finally, the ICC determined to oversee the implementation of the merger and particularly the means by which it was to be accomplished, by retaining in itself jurisdiction during the period in which divestiture was to take place, 324 ICC 48. Though the exchange agreement presently before the Court was not a "necessary" result of the merger decision it is clearly an integral part thereof.

Plaintiff further argues that her stockholder's suit is impliedly authorized by the language of the Interstate Commerce Act. She relies upon the difference in language between 49 U.S.C.A. § 5(2) (b) and 49 U.S.C.A. § 20a(2). While conceding that under § 5, the merger provision of the Act, the Interstate Commerce Commission has the exclusive authority and obligation to determine whether the terms of the proposed merger are "just and reasonable" to the private interests affected by the merger,

$104 million principal amount of said 15-year 4⅝-percent subordinated debentures at a conversion price of $130 per share, subject to adjustments." (328 ICC 884).

4. Plaintiff's brief pp. 25–27. Also, in argument before this Court on June 16, 1967 plaintiff stated: "All I am saying is that this transaction [the sale by the PRR of N & W stock to N & W in ex-

change for N & W convertible debentures] was not envisaged by the merger decision of the ICC in 1964. It was not talked about, it was not envisaged, it was not required." Official Transcript of proceedings held on June 16, 1967 in Federal District Court, Wilmington, Delaware, p. 49. (Brackets added).

5. Ibid. p. 58.

plaintiff points to the lack of any comparable language in § 20a(2), the securities provision of the Act, and from this draws the negative inference that private interests are not and can not be determined in a § 20 proceeding.

■ Plaintiff's contention places an unwarranted and unnatural strain upon the construction of the Act. It is axiomatic that a statute must be construed in its entirety. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). One may not focus on a single provision to the exclusion of the balance.

■ When read as a whole, the Act reveals a threefold approach to the problems of railroad merger and the issuance of securities by railroads. First, the ICC may approve a merger which does not involve the subsequent issuance of any railroad securities, 49 U.S.C.A. § 5. Second, it may authorize a railroad to issue securities wholly divorced from any merger context, 49 U.S.C.A. § 20. Third, the Commission may approve a merger and concurrently authorize a railroad to issue securities.

■ In the third case, the plenary and exclusive jurisdiction of the ICC to determine whether the terms of a merger are "just and reasonable" to the private interests involved is extended to include any securities which are issued appurtenant to a railroad merger.[6] Mississippi River Fuel Corporation v. Slayton, 359 F.2d 106 (8th Cir. 1966), Rev'd on other grounds sub nom. Levin v. Mississippi River Fuel Corp., 386 U.S. 162, 87 S.Ct. 927, 17 L.Ed.2d 834 (1967).

■■ The merits or demerits and the fairness or unfairness of the terms of the approved issue of Norfolk and Western securities, are not, in the first instance,

matters for this Court's jurisdiction or concern. These are committed to the expertise of the Commission, Mississippi River Fuel Corporation v. Slayton, supra. ICC action in this area is then subject to review by a three-judge district court, 28 U.S.C.A. §§ 2321–2325, with a direct appeal to the Supreme Court, 28 U.S.C.A. § 1253. The Commission has a duty to insure that the terms of a stock exchange agreement arising out of a railroad merger are not too onerous to minority stockholders. Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948); Stott v. United States, 166 F.Supp. 851 (S.D.N.Y.1958).

In *Schwabacher*, the Supreme Court was faced with a problem similar to that raised by plaintiff's contentions in the instant suit. Mr. Justice Jackson, speaking for the majority, dispelled all doubt as to the nature and extent of the statutory powers and duties of the ICC in these cases:

> "The Commission, under this Act as well as the Act of 1920, was also given complete control of the capital structure to result from a merger. * * * It appears to us inconsistent with the Interstate Commerce Act for the Commission to leave claims growing out of the capital structure of one of the constituent companies to be added to the obligations of the surviving carrier, contingent upon the decision of some other tribunal or agreement of the parties themselves. * * * We think the Commission was in error in assuming that it did not have, or was at liberty to renounce or delegate, power finally to settle the amount of capital liabilities of the new company and the proportion or amount thereof which each class of stockholders should

---

6. This construction of the Act would seem to be dictated *a fortiori* by the recent decision in Denver and Rio Grande Western Railroad Co. v. United States, 387 U.S. 485, 87 S.Ct. 1754, 18 L.Ed.2d 905 (June 5, 1967) where a majority of the Supreme Court, in a non-merger case, observed that "the foundations of the ICC's obligation under § 5 are largely applicable to § 20a as well. Section 20a,

like § 5, must after all be read in the context of overall ICC responsibilities", in holding that the Commission had not complied with its statutory responsibilities under § 20a when it approved the issuance of securities of one common carrier to another wtihout consideration of the possible anti-competitive consequences of the arrangement.

receive on account of its contributions to the new entity. * * * In determining whether each class of stockholder receives an equivalent of what it turns in, the Commission, of course, is under a duty to see that minority interests are protected, especially when there is an absence of arm's length bargaining or the terms of the merger have been imposed by management interests adverse to any class of stockholders." 334 U.S. at pp. 195, 197–198, 201, 68 S.Ct. at p. 965.

Nor does Otis & Co. v. Pennsylvania R. Co., 61 F.Supp. 905 (E.D.Pa.1945) relied upon by plaintiff dictate a contrary result. While it is true that in that case Judge Kalodner concluded that a Federal District Court might, under certain circumstances, properly have jurisdiction to determine the private rights of stockholders which the ICC cannot determine, he clearly envisioned a situation where, unlike the instant case, the liability sought to be imposed was against a group of directors for breach of their fiduciary duties.[7] Furthermore, again unlike the present suit, *Otis* involved the issuance of railroad securities in a non-merger context and is thus, inapposite in a situation where the securities in question are an indispensable by-product of a railroad merger.[8]

■ Plaintiff also contends that § 20a, unlike § 5, contains inadequate notice provisions with respect to hearings held under Section 20a and that this con-

stitutes a denial of due process.[9] However, the actual notice mandates in the two statutes are identical. Only the governors of the various states involved are informed of the pending hearings, 49 U.S.C.A. § 5(2) (b); 49 U.S.C.A. § 20a (6). The only apparent difference is that under § 5, the Commission "shall afford reasonable opportunity for interested parties to be heard" whereas no similar provision was placed within § 20a. The Court need not speculate as to why Congress specifically provided only in § 5 that a reasonable opportunity for hearing be granted, since it appears that under 49 U.S.C.A. § 13(1) the plaintiff here is given a reasonable opportunity to be heard in a proceeding under § 20a of the Act. Abramson v. Western Maryland Railway Company, 142 F.Supp. 694 (E.D.Pa.1956). Plaintiff's claim that the Act's statutory scheme for the provision of notice and hearing amounts to a denial of due process is without merit.

As a matter of fact, the record before the Court discloses that the plaintiff was given notice of the pending § 20a proceedings in a proxy statement sent by Norfolk and Western to all of its record stockholders well in advance of the ICC hearings which resulted in approval of the issuance of the challenged securities.

■ In accordance with the foregoing opinion, defendants' motions to dismiss for lack of jurisdiction are granted.[10]

Submit order.

---

7. Otis & Co. v. Pennsylvania R. Co., supra, at p. 910.

8. See also Footnote 6, supra.

9. Plaintiff concedes that § 5 notice provisions are adequate and do not violate due process, but points to a difference in language of the notice provisions of § 5 and § 20a as part of her contention that

the two sections are to be read independently of one another. As already indicated, that position is untenable.

10. The Court having determined that it lacks jurisdiction over the subject matter of this suit, the other issues raised by defendants' motions to dismiss are rendered moot.