**Frieda SUFFIN, Appellant,**

v.

**The PENNSYLVANIA RAILROAD COMPANY, the Pennsylvania Company and Norfolk and Western Railway Company.**

**No. 17106.**

United States Court of Appeals
Third Circuit.

Argued May 7, 1968.

Decided June 6, 1968.

Abraham L. Pomerantz, Pomerantz, Levy, Haudek & Block, New York City (Irving Morris, Cohen, Morris & Rosenthal, Wilmington, Del., William E. Haudek, Daniel W. Krasner, New York City, on the brief), for appellant.

David L. Wilson, General Atty., Legal Dept., Philadelphia, Pa. (Potter, Anderson & Corroon, Wilmington, Del., on the brief), for Pennsylvania Co. and Pennsylvania R.R. Co.

Francis S. Bensel, Kelly, Drye, Newhall, Maginnes & Warren, New York City (Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Frank H. Heiss, Richard J. Concannon, New York City, on the brief), for Norfolk and W. Ry. Co.

Before HASTIE, Chief Judge, and McLAUGHLIN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

This appeal is from an order of the District Court granting defendants-appellees' motions to dismiss a derivative stockholder suit for lack of jurisdiction. See Suffin v. Pennsylvania Railroad Company, 276 F.Supp. 549 (D.Del.1967), where the background facts and motions are accurately summarized. The appellant brought her derivative suit, seeking damages for breach of fiduciary duty, as related to the exchange, over a ten-year period, of convertible debentures issued by Norfolk and Western Railway Company (N & W) for N & W common stock held by The Pennsylvania Company, a wholly-owned subsidiary of The Pennsylvania Railroad Company (together, PRR).

Even though the complaint alleges that PRR dominated and controlled N & W through stock ownership and an interlocking directorship at the time of the initial "memorandum of agreement" setting the terms of the challenged exchange (September 22, 1964), the complaint also concedes that all PRR officers and directors had resigned from the N & W Board by September 16, 1964. The record further shows that on October 13, 1964, PRR had deposited all its shares of N & W in three, I.C.C.-approved, independent voting trusts pursuant to the Interstate Commerce Commission (I.C.C.) "merger" decision of June 24, 1964, which established certain preconditions for a railroad merger, 324 I.C.C. 1, 48–49 (1964). The transaction was approved again by the N & W directors on September 28, 1965 (328 I.C.C. at 885) and the agreement (dated as of December 31, 1965) was submitted for I.C.C. approval on February 28, 1966. The "securities" decision of April 13, 1966, approving the contemplated exchange, 328 I.C.C. 884 (1966), makes specific reference to the earlier merger decision and to its required PRR divestiture of N & W stock, and we note, as did the District Court, that in its "merger" decision the I.C.C. explicitly "retain[ed] jurisdiction for the purpose, among others, of insuring an orderly divestiture within the 10-year period * * *" 324 I.C.C. at 48.[1]

The District Court concluded that the I.C.C. had approved the challenged securities transaction and, in doing so, acted pursuant to statutory authority that allowed, in the particular circumstances of the suit at bar, a determination that the terms of the securities transaction were "just and reasonable"[2] to private interests. Consequently, the District Court decided that the I.C.C., in approving the transaction, had passed on the gravamen of appellant's complaint and that her suit, therefore, constituted a challenge to an I.C.C. determination that had to be brought before a three-judge District Court pursuant to 28 U.S.C. §§ 2321–2325. Accordingly, the motions to dismiss were granted.

Our own examination of the two I.C.C. decisions involved, 324 I.C.C. 1 (1964)

---

1. The appellant's argument that the "merger" and "securities" decisions should be viewed as "separate and distinct" was rejected by the District Court. 276 F.Supp. at 552. A reading of the two Reports of the Commission strongly supports this conclusion and the interrelationship of this merger and divestiture plan with several other mergers and securities problems before the I.C.C. (see 324 I.C.C. at 16ff.) suggests that the delay between the two decisions is not support for appellant's argument that the I.C.C. decisions are related only "historically." See Penn-Central Merger Cases, 389 U.S. 486, 511–518, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968).

2. 49 U.S.C. § 5(2) (b). See Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 967, 92 L.Ed. 1305 (1948), where the court used this language at pp. 198–199, in addition to the wording quoted at pp. 553–554 of the District Court opinion:
   "Apart from meeting the test of the public interest, the merger terms, as to stockholders, must be found to be just and reasonable."
   See, also, 49 U.S.C. § 20a.

and 328 I.C.C. 844 (1966), and particularly our consideration of the detailed discussion of the divestiture required, 324 I.C.C. at 24–28, and the explicit I.C.C. finding that the exchange "is in the best interest of the * * * security holders," 328 I.C.C. at 891, convinces us that the District Court reached the proper result.[3] The appellant's statutory argument must be rejected in view of the inter-relationship between the above-mentioned I.C.C. "merger" and later "securities" decisions, 276 F.Supp. at 552. The District Court was entirely correct in concluding that Otis & Co. v. Pennsylvania R. Co., 61 F.Supp. 905 (E.D.Pa.1945), aff'd 155 F.2d 522 (3rd Cir. 1946), was inapposite and did not govern this case (276 F.Supp. at 554).[4] We will affirm the order of dismissal for lack of jurisdiction[5] on the basis of the thorough and persuasive opinion of Chief Judge Wright.

3. Appellant argues that the debenture-for-stock transaction was not contemplated by the merger decision since the I.C.C. mentioned only a cash purchase by N & W of its own stock. 324 I.C.C. at 41. We reject this argument, and any conclusions drawn therefrom, since the cash purchase discussion was not presented as the sole device for N & W repurchase and the I.C.C. appears to have discussed the impact of a "cash sale" on the N & W because it was the type of repurchase that would have hurt the N & W the most—as contrasted with a multitude of potential deferred payment alternatives. Since a party asserting jurisdiction carries the burden of proof, see Kaufman v. Liberty Mutual Insurance Company, 245 F.2d 918, 920 (3rd Cir. 1957), appellant's interpretation of the I.C.C. report, without more, is a weak foundation for allowing their statutory argument to prevail.

4. Our conclusion that the "merger" and "securities" decisions are in fact inter-related obviates any need to discuss at length the appellant's arguments on the statutory nature of an I.C.C. determination if a "securities" decision is related to a merger only "historically" and is subject to I.C.C. review solely under the language of § 20a. Decisions such as County of Marin v. United States, 356 U.S. 412, 78 S.Ct. 880, 2 L.Ed.2d 879 (1958); Pittsburgh & W. Va. Ry. v. United States, 281 U.S. 479, 50 S.Ct. 378, 74 L.Ed. 980 (1930); and N. Y. Central Securities Co. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138 (1932), are thus inapposite in these circumstances since the question of what the I.C.C. "must" do in a § 20a determination is irrelevant in a situation where it chose to exercise § 20a powers in connection with a merger under § 5, Schwabacher v. United States, supra.

There is no doubt that the appellant and her class could have intervened and been heard in the I.C.C. proceedings, e. g., 49 U.S.C. § 13(1), Southern Railway Company v. United States, 186 F. Supp. 29, 42 (N.D.Ala.1960); Abramson v. Western Maryland Railway Company, 142 F.Supp. 694, 696 (E.D.Pa. 1956); 49 U.S.C. § 20a(6); Alleghany Corp. v. Breswick & Co., 353 U.S. 151, 175, 77 S.Ct. 763, 1 L.Ed.2d 726 (1957); see, also, Oscar Gruss & Son v. United States, 386 U.S. 776, 87 S.Ct. 1478, 18 L.Ed.2d 520 (1967). Although the N & W proxy of March 23, 1966 gave relatively short notice of the pending application to the I.C.C. for approval of the exchange of stock for debentures, the N & W proxy of April 2, 1965, gave the appellant ample notice that a debenture-for-stock purchase agreement was being prepared as part of the divestiture necessary to accomplish the merger. The essential terms and characteristics of the transaction were set forth and an aggrieved shareholder was on notice that such a transaction was to be submitted to the I.C.C. for approval at a future date.

5. The submitted order, approved by all counsel, provided for dismissal with prejudice. Although she argues that dismissal "with prejudice" is improper in this case, appellant has advanced no reasons why she should not be deemed to have waived this objection.