Daniel A. BRUNO, Philip R. Herzig, Edward A. Rogers, Edward A. Rogers and Ethel Rogers, as joint tenants, and Guarantee and Trust Co., Trustee FBO Edward Rogers, Petitioners,

and

Drexel Burnham Lambert Incorporated, a Delaware corporation, Intervenor,

v.

WESTERN PACIFIC RAILROAD COMPANY, a Delaware corporation, and Union Pacific Corporation, a foreign corporation, Respondents.

Court of Chancery of Delaware,
New Castle County.

Submitted: July 16, 1985.
Decided: Aug. 9, 1985.

Joseph A. Rosenthal, Morris & Rosenthal, P.A., Wilmington, Attys. for petitioners in C.A. No. 7250.

Eliot Alazraki, Eliot Alazraki, P.A., Wilmington, Attys. for petitioners in C.A. No. 7274.

Vernon R. Proctor, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Attys. for intervenor.

R. Franklin Balotti, Richards, Layton & Finger, Wilmington, Attys. for respondents.

BERGER, Vice Chancellor.

Petitioners filed this appraisal action pursuant to 8 *Del. C.* § 262 following the cash-out merger between respondents, Western Pacific Railroad Company ("Wes Pac") and Union Pacific Corporation ("Union Pacific"). With a trial date rapidly approaching, respondents have questioned this Court's subject matter jurisdiction inasmuch as this merger between two railroads was approved by the Interstate Commerce Commission ("ICC") as "just and reasonable." At the direction of the Court, the parties briefed the issue of whether Subchapter III of the Interstate Commerce Act, 49 *U.S.C.* § 11341, *et seq.* (the "Act"), preempts an appraisal remedy in this Court under the holding in *Schwabacher v. United States*, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948).

On January 22, 1980 respondents entered into a merger agreement whereby Wes Pac would be merged into a wholly-owned subsidiary of Union Pacific. The following day, in accordance with the agreement, Union Pacific commenced a tender offer for any or all shares of Wes Pac at $20 per share. In its Offer to Purchase, Union Pacific disclosed that those Wes Pac stockholders who dissented from the second step merger might not be entitled to appraisal under the holding in *Schwabacher*. However, the stockholders were informed that Union Pacific "has agreed that in the event

the Merger is consummated, it will not object if, holders of Shares not owned by the Purchaser seek the right to dissent and demand appraisal of their Shares under Delaware law." Approximately 77% of the Wes Pac common stock outstanding was tendered.

Following the tender offer, in September, 1980, Union Pacific applied for ICC approval of the proposed merger. The ICC's 1982 decision approving the merger was appealed to the United States Court of Appeals for the District of Columbia Circuit. On appeal, respondents took the position that *Schwabacher* did not eliminate the right to appraisal because "by contract" Union Pacific had allowed the Wes Pac stockholders to seek appraisal under the Delaware statute. The Court of Appeals affirmed the ICC's stock valuation determination, finding that its methodology was reasonable and its conclusions supported by substantial evidence. *Southern Pacific Transportation Co. v. ICC*, 736 F.2d 708, 726 (D.C. Cir.1984), *cert. denied sub nom, Kansas City Southern Railway Co. v. United States*, — U.S. —, 105 S.Ct. 1171, 84 L.Ed.2d 322 (1985).

Respondents proceeded with the merger while the ICC's decision was on appeal. In the merger proxy statement dated May 2, 1983, the Wes Pac stockholders again were advised of the holding in *Schwabacher* and that, "[n]evertheless, Union Pacific has agreed that it will not object if [Wes Pac stockholders] demand appraisal...." The merger was approved at a stockholder's meeting on May 24, 1983. However, a large percentage of the minority stockholders dissented from the merger and are attempting to exercise their appraisal rights.

Petitioners instituted this appraisal proceeding in July, 1983 and trial has been scheduled to begin on September 16, 1985. By letter dated March 29, 1985, counsel for respondents brought *Schwabacher* to the Court's attention and suggested that this Court lacks jurisdiction to hear the appraisal claims.

Were it not for the fact that this Court's jurisdiction has been called into question, I would not hesitate to proceed with the trial. Respondents' representations to the Wes Pac stockholders and their position before the Court of Appeals should, as a matter of equity, preclude them from advancing a contrary position in this Court. However, in the absence of subject matter jurisdiction, a decision in this proceeding would be a nullity. *Dover v. Philadelphia Housing Authority*, 318 Pa.Super. 460, 465 A.2d 644 (1983). The parties to an action may not confer subject matter jurisdiction by agreement, *Maxwell v. Vetter*, Del.Supr., 311 A.2d 864 (1973), and the Court cannot acquire jurisdiction by estoppel. *Bruce E.M. v. Dorothea A.M.*, Del.Supr., 455 A.2d 866 (1983). Accordingly, this Court must decide the jurisdictional question notwithstanding respondents' prior representations or its "contract" with the Wes Pac dissenters.

The Interstate Commerce Act grants the ICC exclusive jurisdiction to consider and approve certain mergers and consolidations. 49 *U.S.C.* § 11341, *et. seq.* The Act sets forth the types of transactions to which the ICC's approval authority applies (§ 11343) and the considerations which guide that decision (§ 11344). The section of the Act at issue provides:

> The authority of the Interstate Commerce Commission under this subchapter is exclusive. A carrier or corporation participating in or resulting from a transaction approved by or exempted by the Commission under this subchapter may carry out the transaction, own and operate property, and exercise control or franchises acquired through the transaction without the approval of a State authority. A carrier, corporation, or person participating in that approved or exempted transaction is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction, hold, maintain, and operate property, and exercise control or fran-

chises acquired through the transaction. 49 *U.S.C.* § 11341(a).

In *Schwabacher,* the Supreme Court analyzed the predecessor to § 11341. That case involved the merger of Pere Marquette Railway Company ("Pere Marquette"), a Michigan corporation, with the Chesapeake and Ohio Railway Company ("C & O"), a Virginia corporation. At the time of the merger, dividends on Pere Marquette's cumulative preferred stock were in arrears in the amount of $72.50 per share but the value of the C & O stock to be exchanged in the merger for the Pere Marquette preferred stock did not include the amount of the accumulated unpaid dividends. Appellants claimed that the merger constituted a dissolution or winding up and that, under Michigan law, they were entitled to receive payment for their shares at par plus unpaid dividends.

The ICC held that the merger terms were just and reasonable as to each class of stockholders and approved the merger. However, the ICC declined to decide the Michigan law question, stating that Pere Marquette and C & O were free to settle controversies with dissenting stockholders through negotiation and litigation in the courts. The ICC did find that any additional amounts which might be payable as a result of further action by the dissenting stockholders would not involve a burden of excessive expenditure considering C & O's assets and the maximum possible cost that would be involved in resolving the dissenters' claims.

The Supreme Court reversed, holding that liquidation rights granted to dissenting stockholders by state law do not survive the ICC's approval of the merger as just and reasonable. After reviewing the history of the Act, the Court stated:

> It appears to us inconsistent with the Interstate Commerce Act for the Commission to leave claims growing out of the capital structure of one of the constituent companies to be added to the obligations of the surviving carrier, contingent upon the decision of some other tribunal or agreement of the parties themselves. We think that the Commission must pass upon and approve all capital liabilities which the merged company will assume or discharge as a result of the merger.

> *   *   *   *   *   *

> We think the Commission was in error in assuming that it did not have, or was at liberty to renounce or delegate, power finally to settle the amount of capital liabilities of the new company and the proportion or amount thereof which each class of stockholders should receive on account of its contributions to the new entity.

*Schwabacher v. United States, supra,* 334 U.S. at 197–98, 68 S.Ct. at 966–67 (footnote omitted).

The Court noted that the ICC's jurisdiction is "plenary" and "exclusive" and held that, "no rights alleged to have been granted to dissenting stockholders by state law provision concerning liquidation survive the merger agreement approved ... by the Commission as just and reasonable." *Id.* at 201, 68 S.Ct. at 968.

Consistent with the language quoted above, *Schwabacher* has been applied in more recent decisions holding that dissenting stockholders' state law rights are preempted by ICC approval of the merger at issue. In *Altman v. Central of Georgia Railway Company,* 488 F.2d 1302 (D.C.Cir. 1973), for example, the court affirmed the dismissal of a state law action to compel the payment of dividends on preferred stock, holding:

> It would appear, thus, that *Schwabacher* is dispositive of the litigation before us. Appellants' claim of right to additional dividends derives solely from state law, and it does not survive the final order of the Commission approving the consolidation, ... *Id.* at 1305.

Similarly, in *Suffin v. Pennsylvania Railroad Company,* 276 F.Supp. 549 (D.Del. 1967), *aff'd.,* 396 F.2d 75 (3rd Cir.1968), *cert. denied,* 393 U.S. 1062, 89 S.Ct. 713, 21

L.Ed.2d 705 (1969), after concluding that *Schwabacher* applies to the statutory provision governing ICC approval of securities transactions as well as the provision governing mergers, the court held that it lacked subject matter jurisdiction to hear a derivative suit challenging the terms of an ICC approved exchange of certain railroad securities. *See also Stott v. United States*, 166 F.Supp. 851, 859 (S.D.N.Y.1958) (ICC, in approving merger, looks only to the Act and dissenting stockholders are not entitled to any special rights conferred on them as dissenters under state law); *Fried v. United States*, 212 F.Supp. 886 (S.D.N.Y.1963) (same).

Petitioners contend that the Act does not preempt state statutes relating to dissenters' rights. Instead, § 11341 exempts railroad mergers from such state laws "as necessary" to carry out the transaction. An exemption, they argue, must be based upon a factual determination by the ICC that the exemption is required and an exemption may be waived. From this premise, petitioners argue that exemption is not necessary in this case where Union Pacific has assets in excess of $10 billion. Alternatively, petitioners contend that respondents have waived any exemption as to the Delaware appraisal statute by their prior conduct noted above. Petitioners submit that *Schwabacher* does not apply because the Court there only addressed the ICC's merger approval authority and not its exemption authority.

Petitioners' argument relies upon an overly narrow reading of *Schwabacher* and on other federal authority which is distinguishable. The Supreme Court in *Schwabacher* necessarily passed upon the ICC's "exemption authority" in analyzing its merger approval authority. For example, in discussing the standards governing the ICC's decisions, the Court noted that the merger must be in the public interest and that the merger terms must be just and reasonable to the stockholders. If those merger terms were subject to alteration by separate state law proceedings, the Court stated that the "just and reasonable" determination would be "largely meaningless." *Schwabacher v. United States, supra*, 334 U.S. at 198–199, 68 S.Ct. at 966–967. Following an analysis of the factors relevant to a stock valuation under the Act, the Supreme Court concluded:

> When stockholders are given what it is just and reasonable they should have, the Interstate Commerce Act does not permit state law to impose greater obligations on the financial structure of the merging railroads with consequent increased calls upon their assets or earning capacity. *Id.* at 201, 68 S.Ct. at 968.

Thus, the *Schwabacher* decision effectively holds that state laws providing dissenters' rights are necessarily exempted under the Act.

The cases relied upon by petitioners as evidence of a more limited interpretation of *Schwabacher* do not involve state laws governing stockholders' rights. In *City of Palestine, Texas v. United States*, 559 F.2d 408 (5th Cir.1977), *cert. denied*, 435 U.S. 950, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978), the Court held that the ICC had exceeded its merger approval authority by voiding a contract which was not germane to the success of the merger. The contract, between Missouri Pacific Railroad Company ("Mo-Pac") and the City of Palestine Texas, required Mo-Pac to maintain a specified number of employees in Palestine. The Court noted that the Palestine Agreement, although a burden on Mo-Pac, presented no obstacle to the merger and that the ICC's approval of a merger may overturn state law only where necessary to carry out the transaction. Since the Palestine Agreement did not affect the merger, the ICC was without authority to nullify Mo-Pac's contractual obligations.

It is noteworthy that the Court in *City of Palestine* distinguished *Schwabacher* as being a case where the stockholders insisted upon compensation in excess of the amount found just and reasonable by the ICC. *Schwabacher* and two other authorities were described as being "cases approv-

ing the ICC's nullification of state law, [where] the laws stood in the way of the approved transaction." *Id.* at 415. Petitioners here, likewise, are seeking compensation beyond that found just and reasonable by the ICC.

The decision in *Brotherhood of Locomotive Engineers v. ICC*, 761 F.2d 714 (D.C. Cir.1985) does not advance petitioners' argument either. In *Brotherhood* the court held that the ICC cannot exempt railroads from the provisions of the Railway Labor Act without supplying a reasoned basis for the conclusion that such an exemption is necessary to the transaction. In *Brotherhood* as in *City of Palestine*, the court distinguished *Schwabacher* as being a case where the preempted law posed an obstacle to the transaction. *Id.* at 723.

Based upon the foregoing, I conclude that *Schwabacher* is controlling and that this action must be dismissed for lack of subject matter jurisdiction. This holding does not purport to deny petitioners the right to pursue other claims relating to the merger. It is limited solely to the availability of the statutory appraisal proceeding. I request respondents to submit a form of order in accordance with this decision, on notice.